IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

    Plaintiff,

          v.

U.S. DEPARTMENT OF JUSTICE,

    Defendant.

Civil Action No. 1:19-cv-02743-CJN

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)    I am the Section Chief of the Record/Information Dissemination Section

("RIDS"), Information Management Division ("IMD"), Federal Bureau of Investigation ("FBI"),

Winchester, Virginia.  I joined the FBI in September 2011, and prior to my current position, I

was the Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS

Litigation Support Unit from November 2012 to June 2016; and an Assistant General Counsel,

FBI Office of General Counsel, Freedom of Information Act ("FOIA") Litigation Unit, from

September 2011 to November 2012.  In those capacities, I had management oversight or agency

counsel responsibility for FBI FOIA and Privacy Act ("FOIPA") litigation cases

nationwide.  Prior to my joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement

Administration ("DEA") from September 2006 to September 2011, where among myriad legal

responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA

in FOIPA suits nationwide.  I also served as a U.S. Army Judge Advocate General's Corps

1

Officer in various assignments from 1994 to September 2006 culminating in my assignment as Chief, General Litigation Branch, U.S. Army Litigation Division where I oversaw FOIPA litigation for the U.S. Army.  I am an attorney registered in the State of Ohio and the District of Columbia.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 239 FBI employees, supported by approximately 95 contractors, who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives.  The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)    Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. §552a. Specifically, I am aware of the FBI's handling of Plaintiff's FOIA request for the electronic communication that initiated the counterintelligence investigation of President Trump's 2016 presidential campaign.

(4)    In response to Plaintiff's request, the FBI processed one record consisting of four pages of responsive material subject to the FOIA.  The FBI determined these four pages were

2

exempt in part pursuant to one or more applicable FOIA Exemptions. In accordance with *Vaughn v. Rosen*, 424 F.2d 820 (D.C. Cir. 1973), this declaration is submitted in support of Defendant's motion for summary judgment and provides the Court and Plaintiff with the administrative history of Plaintiff's request and the FBI's justification for withholding information in part pursuant to and FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E), 5 U.S.C. §§ 552(b)(3), (b)(6), (b)(7)(C), (b)(7)(D)[1], and (b)(7)(E).[2]

### ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUEST

(5)   By letter dated July 11, 2019, Plaintiff submitted a FOIPA request to the FBI seeking the electronic communication that initiated the counterintelligence investigation of President Trump's 2016 presidential campaign. **(Ex. A.)** By letter dated July 24, 2019, the FBI acknowledged receipt of Plaintiff's FOIPA request and assigned it FOIPA Request No. 1442326-000. **(Ex. B.)**

(6)   On September 13, 2019, Plaintiff filed a Complaint in the United States District Court for the District of Columbia. (ECF No. 1.)

(7)   By letter dated March 17, 2020, the FBI released one record, consisting of four pages, to the Plaintiff. The FBI advised the four pages of records were released in part, with certain information withheld pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E). **(Ex. C.)**

---

[1] FBI inadvertently omitted the checkmark for the (b)(7)(D) box on the release letter; however, (b)(7)(D) is being asserted to withhold information within the record.

[2] In addition to FBI's withholdings, the FBI also consulted with the Department of State ("DOS") concerning their equities. DOS withheld information within the four pages pursuant to FOIA Exemptions 1 and 6, 5 U.S.C. §§ 552(b)(1) and (b)(6).

3

## JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA

(8)      The FBI processed the record responsive to Plaintiff's request to achieve maximum disclosure consistent with the access provisions of the FOIA.[3]  Every effort was made to provide Plaintiff with all material in the public domain and with all reasonably segregable, non-exempt information.  The FBI did not withhold any reasonably segregable, nonexempt portions from Plaintiff.  Further description of the information withheld, beyond what is provided in this declaration, could identify the actual exempt information protected by the FBI.  The FBI numbered all pages of its production consecutively as "FBI(19cv2743)-1 through FBI(19cv2743)-4."  These numbers are located at the bottom of each page.  Additionally, the FBI is including an index (**Ex. D.**) to explain which FOIA Exemptions were asserted on each of the four pages released in part.[4]

(9)      Additionally, on the four Bates numbered pages released in part and provided to Plaintiff, and  accounted for in the FBI's index, the FBI further categorized its application of Exemptions to better explain the nature of the information withheld pursuant to the provisions of the FOIA.  Specifically, the FBI applied numerical codes that coincide with various categories of exempt information.  These coded categories are provided to assist the Court and Plaintiff in their review of the FBI's explanations for the FOIA Exemptions it asserted to withhold information.  The coded, Bates-numbered pages together with this declaration demonstrate that all material withheld by the FBI is exempt from disclosure pursuant to the cited FOIA Exemptions, or is so intertwined with protected material segregation is not possible without revealing the underlying protected material.

_____

[3] Plaintiff advised it does not challenge the FBI's search for the responsive record.

[4] If requested, the FBI can provide copies of all records processed and released to the Court for *in camera* inspection.

(10)      Each instance of information withheld pursuant to a FOIA Exemption is accompanied by a coded designation that corresponds to the categories listed below.  For example, if "(b)(7)(C)-1" appears on a record, the "(b)(7)(C)" designation refers to FOIA Exemption 7(C) protecting against unwarranted invasions of personal privacy.  The numerical designation of "1" following the "(b)(7)(C)" narrows the main category into a more specific subcategory, such as "Names and Identifying Information (including telephone numbers, duty locations) of FBI Special Agents and Professional Staff."

(11)     Listed below are the categories used to explain the FOIA Exemptions the FBI asserted to withhold information:

| SUMMARY OF EXEMPTION JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Exemption 3** | **Information Protected by Statute** |
| (b)(3)-1 | National Security Act of 1947 [50 USC Section 3024(i)(1)] |
| **Exemptions 6 & 7(C)** | **Unwarranted/Clearly Unwarranted Invasion of Personal Privacy** |
| (b)(6)-1 and (b)(7)(C)-1 | Names and Identifying Information (including telephone numbers, duty locations) of FBI Special Agents and Professional Staff |
| **Exemption 7(D)** | **Confidential Source Information** |
| (b)(7)(D)-1 | Identity of, and Information Provided by, a Foreign Government Requesting Express Confidentiality |
| **Exemption 7(E)** | **Law Enforcement Techniques and Procedures** |
| (b)(7)(E)-1 | Sensitive File Number [cited in conjunction with (b)(3)-1] |
| (b)(7)(E)-2 | Identity of Specific FBI Counterintelligence Squad and the location of a Specific FBI Legat Office |
| (b)(7)(E)-3 | Date/Type of Investigation (Preliminary / Full Investigations) |

**EXEMPTION 3 - INFORMATION PROTECTED BY STATUTE**

(12)    5 U.S.C. § 552 (b)(3) exempts from disclosure information which is:

specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

(b)(3)-1 NATIONAL SECURITY ACT OF 1947, 50 U.S.C. § 3024 (i)(1)

(13)    The FBI asserted Exemption 3 to withhold information pursuant to Section 102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA").  50 U.S.C. § 3024(i)(1) provides that the Director of National Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources and methods."[5]  As relevant to U.S.C. § 552(b)(3)(B), the National Security Act of 1947 was enacted before the date of enactment of the OPEN FOIA Act of 2009.  On its face, this federal statute leaves no discretion to agencies about withholding from the public information about intelligence sources and methods.  Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(i)(1) is absolute.  *See* CIA v. Sims, 471 U.S. 159 (1985).

(14)    In order to fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC") for the classification of information under applicable laws, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence.  50 U.S.C. §

---

[5] Section 102A(i)(1) of the National Security Act was previously codified at 50 U.S.C. § 403(i)(1).  As a result of the reorganization of Title 50 of the U.S. Code, Section 102A(i)(1) is now codified at 50 U.S.C. § 3024(i)(1).

3024(i)(1). In implementing this authority, the DNI promulgated Intelligence Community Directive 700, which provides that IC elements shall protect "national intelligence and intelligence sources and methods and activities from unauthorized disclosure."[6] The FBI is one of 17 member agencies comprising the IC, and as such must protect intelligence sources and methods.

(15)     Given the plain Congressional mandate to protect the IC's sources and methods of gathering intelligence, the FBI has determined that intelligence sources and methods would be revealed if any of the withheld information is disclosed to plaintiffs. Therefore, the FBI is prohibited from disclosing such information under § 3024 (i)(1). [7]

(16)     The FBI is asserting Exemption 3 in this case, in conjunction with Exemption 7(E), to protect two sensitive file numbers[8] that would reveal intelligence sources and methods. Matters within these file classifications are typically classified and concern counterintelligence matters. However, in this specific context this information is unclassified and also protected under Exemption 7(E) because unclassified intelligence sources and methods were employed as law enforcement techniques, procedures, or guidelines, and thus would qualify as both an intelligence source and method under Exemption 3 and a law enforcement technique under

---

[6] Intelligence Community Directive (ICD) 700, date June 7 2012, at ¶ 2a.

[7] Although § 3024 (i)(1) does not impose a requirement to articulate harm, disclosure of this information presents a bona fide opportunity for individuals to develop and implement countermeasures, resulting in the loss of significant intelligence information, sources, and methods relied upon by national policymakers and the IC to safeguard national security.

[8] The FBI file classification and two letter office of origination code for the Crossfire Hurricane investigation was changed for administrative record keeping purposes; however, both file numbers represent same investigation.

Exemption 7(E).  Notably, § 3024 (i)(1) protects sources and methods regardless of whether they are classified. *See Sims*, 471 U.S. at 176.

**EXEMPTION 7 THRESHHOLD**

(17)     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes.  Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States.  Under this investigative authority, the responsive record herein was compiled in furtherance of the FBI's investigation into Russian Interference in the 2016 presidential election.  Considering this record was compiled to document the FBI's investigation of potential crimes and/or possible threats to national security, the FBI determined they were compiled for a law enforcement purpose.

**FOIA EXEMPTIONS (b)(6) AND (b)(7)(C)**
**CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY AND**
**UNWARRANTED INVASION OF PERSONAL PRIVACY**

(18)     Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  All information that applies to a particular person falls within the scope of Exemption 6.

(19)    Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[9]

(20)    When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure.  In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the record at issue.  When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure.  For purposes of these exemptions, a public interest exists only when information about an individual, their name, or their identifying information would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners.  In each instance wherein information was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.

---

[9] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion.  The privacy interests are balanced against the public's interest in disclosure under both exemptions.

(b)(6)-1 AND (b)(7)(C)-1: NAMES AND IDENTIFYING INFORMATION OF
FBI SPECIAL AGENTS AND PROFESSIONAL STAFF

(21)     Within Exemption category (b)(6)-1 and (b)(7)(C)-1, the FBI protected the names

and identifying information of FBI Special Agents ("SAs") and professional staff.  These FBI

SAs and professional staff were responsible for conducting, supervising, and/or maintaining the

investigation/administrative activities that are subject of the electronic communication

documenting the initiation of the counterintelligence investigation into the Russian Interference

in the 2016 presidential election.  These responsibilities included, but are not limited to, the

following: coordinating/completing tasks in support of the FBI's investigative and administrative

functions, compiling information, conducting interviews, and/or reporting on the status of the

investigations.

(22)     Assignments of SAs to any particular investigation are not by choice.  Publicity,

adverse or otherwise, arising from a particular investigation and/or from use of specific FBI

investigative techniques, may seriously prejudice their effectiveness in conducting other

investigations or performing their day-to-day work.  The privacy consideration is also applied to

protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of

this or other investigations/investigative activities, whether or not they are currently employed by

the FBI.  FBI SAs conduct official inquiries into various criminal and national security violation

cases.  The publicity associated with the release of an SA's identity in connection with a

particular investigation/investigative activities could trigger hostility toward a particular SA.

During the course of an investigation, an SA may engage with all strata of society, conducting

searches and making arrests, both of which result in reasonable but nonetheless serious

disturbances to people and their lives.  Persons targeted by such investigations/investigative

activities, and/or those sympathetic to those targeted, could seek to inflict violence on an SA

based on their participation in an investigation or in the deployment of certain investigative techniques. This is because an individual targeted by such law enforcement actions may carry a grudge against those involved with the investigation, which may last for years. These individuals may seek revenge on SAs and other federal employees involved in a particular investigation or investigative activities. There is no public interest served by disclosing the SAs identities because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities. Thus, disclosure of this information would constitute a clearly unwarranted invasion of their personal privacy; and the FBI properly withheld the names and identifying information of FBI SAs pursuant to Exemptions 6 and 7(C).

(23)    The FBI also withheld the identifying information of FBI professional staff pursuant to Exemptions 6 and 7(C). These FBI professional staff were assigned to handle tasks related to the Crossfire Hurricane investigation. The FBI withheld the Unique Employee Identification Number ("UEID") of an FBI Professional Staff member involved in the classification and review of the record at FBI(19-cv-2743)-1 within the classification stamp. UEIDs are singular numbers assigned to employees, and serve as a means of identification within the government. This unique identifier could be used to identify the specific employee who reviewed this document.   Similar to FBI SAs, these FBI employees could be targeted for reprisal based on their involvement in specific administrative activities. Furthermore, these FBI professional staff were, and possibly are, in positions of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. Thus, these individuals maintain substantial privacy interests in not having their identities disclosed. In contrast, the FBI concluded that no public interest would be served by disclosing the identities of these FBI

professional staff to the general public because their identities would not, themselves,

significantly increase the public's understanding of the FBI's operations and activities.

Accordingly, after balancing these profession staff employees' substantial privacy interests

against the non-existent public interest, the FBI determined disclosure of their identities would

constitute a clearly unwarranted invasion of their personal privacy. Therefore, the FBI properly

withheld the names and identifying information of FBI professional staff pursuant to Exemptions

6 and 7(C).

## EXEMPTION 7(D) – CONFIDENTIAL SOURCE INFORMATION

(24)    Exemption 7(D) protects "records or information compiled for law enforcement

purposes" when disclosure:

> could reasonably be expected to disclose the identity of a
> confidential source, including a State, local or foreign agency or
> authority or any private institution which furnished information on
> a confidential basis, and, in the case of a record or information
> compiled by a criminal law enforcement agency conducting a lawful
> national security intelligence investigation, information furnished
> by a confidential source.

5 U.S.C. § 552(b)(7)(D).

(25)    Numerous confidential sources report to the FBI on a regular basis; they provide

information under express assurances of confidentiality and are "informants" within the common

meaning of the term. Others are interviewed and/or provide information under implied

assurances of confidentiality (*i.e.*, under circumstances from which assurances of confidentiality

may be inferred). In either situation, these sources are considered confidential because they

furnish information only with the understanding that their identities and the information they

provided will not be divulged outside the FBI. Information provided by these sources is singular

in nature, and if released, could reveal their identities. The FBI has learned through experience

12

that Foreign Government sources assisting, cooperating with, and providing information to the

FBI must be free to do so without fear of reprisal.  The FBI has also learned that Foreign

Government sources must be free to furnish information to the FBI with complete candor and

without the understandable tendency to hedge or withhold information because of fear that their

cooperation with the FBI will later be made public.  Foreign Government sources providing

information to the FBI should be secure in the knowledge that their assistance and their identities

will be held in confidence.

(26)     The release of a foreign government source's identity would forever hinder the

relationship that the FBI has with that government as source for future means of obtaining

information.  In addition, when the identity of a foreign government source is revealed, that

revelation has a chilling effect on the activities and cooperation of other foreign government

sources.  Such a result undermines one of the FBI's most important means of collecting

information and could thereby severely hamper law enforcement and national security efforts to

detect and apprehend individuals engaged in the violation of federal criminal laws.

### (b)(7)(D)-1 IDENTITY OF, AND INFORMATION PROVIDED BY, A FOREIGN GOVERNMENT REQUESTING EXPRESS CONFIDENTIALITY

(27)     Within Exemption category (b)(7)(D)-1, the FBI protected the identifying of, and

information provided by, a Foreign Government to the FBI under express grants of

confidentiality.  When processing the record at issue here, the FBI located information provided

by a foreign government. The information provided was sensitive, specific and detailed in nature.

The FBI also determined the foreign government requested that extraordinary efforts be made to

protect the source of this information.  Accordingly, FBI investigators would have, by standard

practice, expressly promised these parties that source identity and the information they provided

would remain confidential.

(28)    Providing express assurances of confidentiality is essential to the FBI's ability to obtain relevant and accurate information from Foreign Governments.  Without these assurances by the FBI, those with access to information critical to FBI investigations may be reluctant to provide information or may modify their statements in order to lessen the severity of any backlash; therefore, the FBI must provide credible assurances of confidentiality to these governments in order to obtain factual, relevant, and timely information.  Release of these sources' identities and/or any singular information they provided may lead to the revelation of their identities and would also display unwillingness by the FBI to honor its assurances of confidentiality to Foreign Governments.  Releasing this information would have a lasting negative impact on the FBI's International program – it would greatly hinder the FBI's ability to maintain foreign government's willingness to provide accurate and relevant information pertaining to criminal activities.

(29)    In sum, a certain foreign government supplied information to the FBI with express assurance their identity, and the information provided, would be held in confidence. Release of this information would endanger the FBI's relationship with foreign governments and cause great detriment to the FBI's ability to maintain reliable relationships with foreign governments; thus, the FBI protected this information pursuant to Exemption 7(D).

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(30)    5 U.S.C. § 552(b)(7)(E) provides protection for:

> law enforcement records [which]…would disclose techniques and
> procedures for law enforcement investigations or prosecutions, or
> would disclose guidelines for law enforcement investigations or
> prosecutions if such disclosure could reasonably be expected to risk
> circumvention of the law.

14

(31)     Exemption (b)(7)(E) has been asserted to protect information within this record, the release of which would disclose techniques and procedures for law enforcement investigations.

(32)     Within the responsive record, the FBI applied Exemption (b)(7)(E) to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement mission, and also to non-public details about techniques and procedures that are otherwise known to the public.  Specifically, the FBI asserted Exemption 7(E) to protect the following categories of information.

(b)(7)(E)-1: SENSITIVE INVESTIGATIVE FILE NUMBERS

(33)     In Exemption category (b)(7)(E)-1, the FBI protected sensitive investigative file numbers.  The FBI determined this exemption is appropriate for protecting these file numbers as the release of file numbering convention identifies the investigative interest, potentially related cases or priority given to such matters.  The file numbers the FBI protected are not known to the general public.  These file numbers contain three separate portions.  The first portions of these file numbers consist of an FBI file classification number which indicate the types of investigative/intelligence gathering programs to which these files pertain.  Many of the FBI's classification numbers are public, which makes disclosure of this information even more telling.  Additionally, the FBI has already released at FBI(19-cv-2743)-1 the type of matter this file classification number would be assigned to, Foreign Agents Registration Act – Russia.  Disclosure of known file classification numbers in the context of investigative records would immediately reveal the types of investigations being pursued in other cases, and thus the types of investigative techniques and procedures available to FBI investigators, and/or non-public facets of the FBI's investigative strategies could be identified and analyzed.  For example, revealing the

FBI has a Foreign Agents Registration Act investigation on a subject who was only known to be investigated for crimes related to public corruption, would reveal key non-public information about the FBI's investigative strategies and gathered evidence. Releasing non-public FBI file classification numbers, particularly here where the investigative matter is defined, would reveal critical information about non-public investigative techniques and procedures, and provide criminals and foreign adversaries the ability to discern the types of highly sensitive investigative strategies the FBI is pursuing whenever such file classification numbers are present within other sensitive FBI investigative records.

(34)    The protected investigative file numbers also contain two letter office of origination codes, indicating which FBI field office, overseas FBI legal attaché or specialty office originated the investigations at issue. Providing this information, in many instances, would provide critical information about how the FBI handled particular criminal behaviors or national security threats. Additionally, it would reveal key pieces about the FBI's non-public FBI investigations or intelligence/evidence gathering sources and methods. Revealing this information could also risk disclosing unknown FBI investigations or intelligence gathering initiatives, by revealing interests in varying areas of FBI investigative responsibility. Releasing this information could also possibly provide significant information about the FBI's failure to detect certain types of criminal behavior. For example, a criminal operating out of San Francisco, California with ties to a criminal organization under investigation in the FBI's Seattle Field Office, could request the FBI's Seattle Field Office's investigative file. If the FBI were to reveal all of the originating office codes in the investigative files present in Seattle's file, and there was no indication the FBI ever pursued an investigation in San Francisco, the criminal

could reasonably assume the FBI failed to locate any evidence of their wrongdoing, emboldening them to continue their activities, undeterred.

(35)    The third portion of these investigative files consist of the numbers given to the unique investigative initiatives these files were created to memorialize.  Releasing these singular file numbers would provide criminals and foreign adversaries with a tracking mechanism by which they can place particular files/investigations within the context of larger FBI investigative efforts.  Continued release of sensitive investigative file numbers would provide criminal with an idea of how FBI investigations may be interrelated and when, why, and how the FBI pursued different investigative strategies.  This would provide criminals with a means of judging where the FBI allocates its limited investigative resources, how the FBI responds to different investigative circumstances, what the FBI knows and when/how they obtained the knowledge, and if there are knowledge-gaps in the FBI's gathered intelligence.

(36)    In summary, repeatedly releasing sensitive FBI investigative file numbers would allow determined criminals and foreign adversaries to obtain an exceptional understanding of the body of investigative intelligence available to the FBI; and where, who, what and how it is investigating certain detected activities.  Release of this information would enable these criminals and foreign adversaries to predict FBI investigations and structure their behavior to avoid detection and disruption by FBI investigators, enabling them to circumvent the law.  Accordingly, the FBI properly asserted FOIA Exemption 7(E) to protect this type of information.

(b)(7)(E)-2: IDENTITY OF AN FBI COUNTERINTELLIGENCE SQUAD, AND LOCATION OF SPECIFIC LEGAT OFFICE

(37)    In Exemption category (b)(7)(E)-2, the FBI protected methods and techniques involving the location and identity of an FBI squad and legat location involved in the investigation of Crossfire Hurricane.  Such office locations and squad/legat are usually found in

17

the administrative headings of internal FBI documents. These headings identify the locations of

the office and units/squads/divisions that originated or received the documents. Disclosure of the

location of the squad and legat involved in the opening of this investigation could reveal the

identity of foreign governments cooperating with FBI to provide information related to targets,

the physical areas of interest of the investigation, and when taken together with the other

locations if identified, could establish a pattern or "mosaic" that identification of a single

location would not. If the locations are clustered in a particular area, it would allow criminals to

avoid those locations, especially if one or more locations appeared with frequency or in a pattern.

This would disrupt the method of the investigative process and deprive the FBI of valuable

information. The withholding of the specific squad and legat involved is justifiable as well under

a similar rationale. Once identified, the squad and legat area of expertise or area of operation

would become known and the targets of the investigations would be able to discern the

investigative strategies deployed by the FBI. For example, knowing that a unit whose focus is on

financial crimes is involved in an investigation is quite different information than knowing that

the unit involved has a focus on crimes of violence. This knowledge could allow a subject to

employ countermeasures targeted toward concealing particular types of behavior and/or allow

them to make informed decisions to avoid altogether certain activities in a particular location.

Furthermore, certain FBI squads are highly specialized, and are involved in deploying particular

investigative techniques and procedures. Revealing their involvement in an investigation would

reveal non-public details concerning which techniques and procedures were deployed in certain

investigative circumstances, and subsequently allow for criminals to predict the FBI's use of

these techniques and procedures in similar investigative circumstances. This would allow for

them to discover and circumvent the deployment of these techniques and procedures, greatly reducing their effectiveness.

(38)     In summary, the FBI withheld the involvement of a particular squad and legat to prevent criminals from adjusting their behavior and activities to circumvent FBI law enforcement efforts.  Accordingly, the FBI properly asserted Exemption 7(E) to withhold this information

### (b)(7)(E)-3 DATE/TYPE OF INVESTIGATION (PRELIMINARY / FULL INVESTIGATIONS)

(39)     The FBI determined coded category (b)(7)(E)-3 is not applicable to the first page of the record.  A corrected copy of the record is attached. **(Ex. E.)**

### CONSULTATIONS AND REFERRALS

(40)     While processing records responsive to Plaintiffs request, the FBI identified information that originated with another government agency.  Specifically, the FBI identified information that originated with the Department of State ("DOS").  Pursuant to established DOJ procedures,[10] the FBI consulted with this agency and asked them to make disclosure determinations with respect to their information.

(41)     The FBI consulted with DOS concerning Bates-numbered pages "FBI(19cv2743)-1 through FBI(19cv2743)-4."  DOS determined that certain information contained in this record was exempt from disclosure pursuant to Exemptions (b)(1) and (b)(6).  Please see the Declaration of Eric F. Stein for further justification for the application of Exemptions (b)(1) and (b)(6) by DOS.  **(Ex. F.)**

---

[10] *See* "Referrals, Consultations, and Coordination: Procedures for Processing Records When An Another Agency or Entity Has an Interest in Them," DOJ Office Information Policy Guidance, http://www.justice.gov/oip/blog/foia-guidance-13.

## SEGREGABILITY

(42)    As discussed in ¶ 4 *supra*, the FBI identified one responsive record consisting of

four pages Released in Part ("RIP").  Following its segregability review, RIDS determined all

four pages could be released in part with redactions per the identified FOIA exemptions herein.

These pages comprise a mixture of material that could be segregated for release and material that

was withheld as release would trigger foreseeable harm to one or more interests protected by the

cited FOIA exemptions on these pages.

## CONCLUSION

(43)    The FBI processed the responsive record and released all reasonably segregable

non-exempt information from the record responsive to Plaintiff's FOIA request and subject to

the FOIA.  The FBI processed the four page record under the access provisions of the FOIA to

achieve maximum disclosure.  Information was properly withheld pursuant to FOIA Exemptions

3, 6, 7(C), 7(D), and 7(E).  The FBI carefully examined the record and determined the

information withheld from Plaintiff in this case, if disclosed, could reveal intelligence sources

and methods; could reasonably be expected to constitute an unwarranted invasion of personal

privacy; could reasonably be expected to disclose the identities of confidential sources and the

information they provided, and would disclose techniques and procedures for law enforcement

investigations.  FBI located equities belonging to DOS within the responsive record.  Upon

consultation, DOS withheld information pursuant to FOIA Exemptions 1 and 6.   After extensive

review of the record at issue, the FBI determined there is no further non-exempt information that

can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through F attached hereto are true and correct copies.

Executed this ___23ʳᵈ___ day of November, 2020.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC,

     Plaintiff,

          v.

U.S DEPARTMENT OF JUSTICE,

     Defendant.

Civil Action No. 1:19-cv-02743-CJN

# **<u>Exhibit A</u>**



**Judicial Watch**
Because no one
is above the law!

July 11, 2019

**VIA CERTIFIED MAIL**

FBI
Record/Information Dissemination Section
Attn: FOIPA Request
170 Marcel Drive
Winchester, VA 22602-4843

**Re:  Freedom of Information Act Request**

Dear Freedom of Information Officer:

Judicial Watch, Inc. ("Judicial Watch") hereby requests that the Federal Bureau of Investigation ("FBI") produce the following records *without redactions* pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"):

### The Electronic Communication which led to the initiation of the counterintelligence investigation of the Trump campaign.[1]

Please determine whether to comply with this request within the time period required by FOIA and notify us immediately of your determination, the reasons therefor, and the right to appeal any adverse determination to the head of the agency or his or her designee.  5 U.S.C. § 552(a)(6)(i).  Please also produce all responsive records in an electronic format ("pdf" is preferred), if convenient.  We also are willing to accept a "rolling production" of responsive records if it will facilitate a more timely production.

Judicial Watch also hereby requests a waiver of both search and duplication fees. We are entitled to a waiver of search fees because we are a "representative of the news media."  *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also Cause of Action v. Federal Trade Comm.*, 799 F.3d 1108 (D.C. Cir. 2015); *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381 (D.C. Cir. 1989).  For more than twenty years, Judicial Watch has used FOIA and other investigative tools to gather information about the operations and activities of government, a subject of undisputed public interest.  We submit over 400 FOIA requests annually.  Our personnel, which includes experienced journalists and professional writers on staff and under contract, use their editorial skills to turn this raw information into distinct works that are disseminated to the public via our monthly newsletter, which has a

---

[1] For clarification, I enclose a copy of an April 4, 2018 letter from then-Chairman of the House Permanent Select Committee on Intelligence Devin Nunes to FBI Director Christopher Wray and then-Deputy Attorney General Rod Rosenstein referencing said Electronic Communication.

425 Third St., SW, Suite 800, Washington, DC  20024  • Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 •  Email: info@JudicialWatch.org  •  www.JudicialWatch.org

JUL 17 2019

**FBI/FOIA Request**
**July 11, 2019**
**Page 2 of 3**

circulation of over 300,000, weekly email update, which has over 600,000 subscribers, investigative bulletins, special reports, www.judicialwatch.org website, *Corruption Chronicles* blog, and social media, including Facebook and Twitter, among other distribution channels. We have authored several books, including *Corruption Chronicles* by Tom Fitton (Threshold Editions, July 24, 2012), and another book, *Clean House* by Tom Fitton (Threshold Editions, Aug. 30, 2016), is forthcoming. In 2012, we produced a documentary film, "District of Corruption," directed by Stephen K. Bannon. Our "news media" status has been confirmed in court rulings. *See, e.g., Judicial Watch, Inc. v. U.S. Dep't of Defense*, 2006 U.S. Dist. LEXIS 44003, *1 (D.D.C. June 28, 2006); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp.2d 52 (D.D.C. 2000). As a tax exempt, 501(c)(3) non-profit corporation, we have no commercial interests and do not seek the requested records for any commercial use. Rather, we intend to use the requested records as part of our on-going investigative journalism and public education efforts to promote integrity, transparency, and accountability in government and fidelity to the rule of law.

Judicial Watch also is entitled to a waiver of both search fees and duplication fees because "disclosure of the information is in the public interest." 5 U.S.C. § 552(a)(4)(A)(iii). Disclosure of the requested records undoubtedly will shed light on "the operations or activities of the government." *Cause of Action*, 799 F.3d at 1115 (*quoting* 5 U.S.C. § 552(a)(4)(A)(iii)). Disclosure also is "likely to contribute significantly to the public understanding" of those operations or activities because, among other reasons, Judicial Watch intends to disseminate both the records and its findings to "a reasonably broad audience of persons interested in the subject" via its newsletter, email updates, investigative bulletins, website, blog, and its other, regular distribution channels. *Cause of Action*, 799 F.3d at 1116 (*quoting Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994)). Again, Judicial Watch does not seek the requested records for any commercial benefit or for its own "primary" benefit, but instead seeks them as part of its ongoing investigative journalism and public education efforts to promote integrity, transparency, and accountability in government and fidelity to the rule of law.

In the event our request for a waiver of search and/or duplication costs is denied, Judicial Watch agrees to pay up to $300.00 in search and/or duplication costs. Judicial Watch requests that it be contacted before any such costs are incurred, in order to prioritize search and duplication efforts.

If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 202-646-5172 or bmarshall@judicialwatch.org.

Thank you for your cooperation.

**FBI/FOIA Request**
**July 11, 2019**
**Page 3 of 3**

Very respectfully.

William F. Marshall
Judicial Watch, Inc.

Enclosures

Obtained via FOIA by Judicial Watch, Inc.

Devin Nunes, California, CHAIRMAN

K. M. Thiel Conaway, Texas
Peter T. King, New York
Frank A. LoBiondo, New Jersey
Thomas J. Rooney, Florida
Ileana Ros-Lehtinen, Florida
Michael R. Turner, Ohio
Brad R. Wenstrup, Ohio
Chris Stewart, Utah
Rick Crawford, Arkansas
Trey Gowdy, South Carolina
Elise M. Stefanik, New York
Will Hurd, Texas

Adam B. Schiff, California,
RANKING MEMBER

James A. Himes, Connecticut
Terri A. Sewell, Alabama
Andre Carson, Indiana
Jackie Speier, California
Mike Quigley, Illinois
Eric Swalwell, California
Joaquin Castro, Texas
Denny Heck, Washington

Paul D. Ryan, SPEAKER OF THE HOUSE
Nancy Pelosi, DEMOCRATIC LEADER

## U.S. HOUSE OF REPRESENTATIVES

### PERMANENT SELECT COMMITTEE
### ON INTELLIGENCE

HVC-304, THE CAPITOL
WASHINGTON, DC 20515
(202) 225-4121

DAMON NELSON
STAFF DIRECTOR

TIMOTHY S. BERGREEN
MINORITY STAFF DIRECTOR

April 4, 2018

The Honorable Rod Rosenstein
Deputy Attorney General
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530

The Honorable Christopher Wray
Director
Federal Bureau of Investigation
935 Pennsylvania Ave, NW
Washington, D.C. 20535

Dear Deputy Attorney General Rosenstein and Director Wray:

During our last in-person meeting to discuss the August 24, 2017, subpoenas issued by this Committee to the Department of Justice (DOJ) and Federal Bureau of Investigation (FBI)—which remain in force—you expressed a desire to restore a constructive working relationship with the Committee, and specifically asked that we seek to proceed on a more informal basis without the need for detailed written communications.

At your request, I have endeavored to execute the Committee's oversight responsibilities more informally. More than a month ago, on February 27, 2018, I requested Director Wray's assistance in gaining access to an unredacted version of an Electronic Communication (EC) related to the opening of an FBI counterintelligence investigation into the Trump campaign and responsive to the August 24 subpoenas, which had been made available to the Committee in heavily redacted form. I made Deputy Attorney General Rosenstein aware of this request in early March. On March 14, 2018, Committee investigators were given access to a still heavily redacted version of the EC, which—as I informed Director Wray the next day via phone—was unsatisfactory.

On March 23, 2018, FBI's Assistant Director for Legislative Affairs informed the Committee that FBI would refuse to further unredact the EC based on its supposed sensitivity. The

Obtained via FOIA by Judicial Watch, Inc.

document in question is not highly classified, and law enforcement sources have apparently not been shy about leaking to the press information that the Department and Bureau refuse to share with Congress.

Additionally, DOJ has for months restricted Member access to other documents responsive to the August 24 subpoenas, including four Foreign Intelligence Surveillance Act (FISA) applications targeting Carter Page. As I made clear in a November 2, 2017, letter to Deputy Attorney General Rosenstein, my initial designation of Rep. Trey Gowdy to review the documents was "made without prejudice to, and shall not limit or waive the authority of all Members of the House Permanent Select Committee on Intelligence from reviewing the documents at a later date upon request."

The Committee communicated such a request via email to DOJ's Office of Legislative Affairs (OLA) on February 7, 2018, and followed up—again via email—on February 8, February 14, and February 26. After nearly three weeks without a meaningful response, OLA finally informed the Committee on February 26, 2018, that "the Department has not agreed to allow further member access." Particularly given that multiple members of other committees have been the beneficiaries of such access, this arbitrary resistance to legitimate oversight is unacceptable.

Therefore, in accordance with the August 24, 2017 subpoenas, you are hereby directed to produce to the Committee, by Wednesday, April 11, 2018, an unredacted version of the EC, along with any and all responsive documents previously made available for *in camera* review, including but not limited to the Carter Page FISA applications. Be advised that failure to comply in a satisfactory manner will result in the Committee pursuing all appropriate legal remedies, including seeking civil enforcement of the August 24 subpoenas in federal district court.

Best regards,

Devin Nunes

Devin Nunes
Chairman

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC,

     Plaintiff,

          v.

U.S DEPARTMENT OF JUSTICE,

     Defendant.

Civil Action No. 1:19-cv-02743-CJN

# **Exhibit B**



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

July 24, 2019

MR. WILLIAM F. MARSHALL
JUDICIAL WATCH, INC.
SUITE 800
425 THIRD STREET, SW
WASHINGTON, DC 20024

FOIPA Request No.: 1442326-000
Subject: FBI EC Related to the Opening of
an FBI Counterintelligence Investigation into
the Trump Campaign

Dear Mr. Marshall:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI. Below you will find check boxes and informational paragraphs about your request, as well as specific determinations required by these statutes. Please read each one carefully.

☑ Your request has been received at FBI Headquarters for processing.

☐ You submitted your request via the FBI's eFOIPA system.

    ☐ We have reviewed your request and determined it is consistent with the FBI eFOIPA terms of service. Future correspondence about your FOIPA request will be provided in an email link unless the record's file type is not supported by the eFOIPA system.

    ☐ We have reviewed your request and determined it is not consistent with the FBI eFOIPA terms of service. Future correspondence about your FOIPA request will be sent through standard mail.

☐ The subject of your request is currently being processed and documents will be released to you upon completion.

☐ Release of responsive records will be posted to the FBI's electronic FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

☑ Your request for a public interest fee waiver is under consideration and you will be advised of the decision if fees are applicable. If your fee waiver is not granted, you will be responsible for applicable fees per your designated requester fee category below.

☑ For the purpose of assessing any fees, we have determined:

    ☐ As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

    ☑ As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

    ☐ As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.fbi.gov/foia by clicking on **FOIPA Status** and entering your FOIPA Request Number.   Status updates are adjusted weekly.   The status of newly assigned requests may not be available until the next weekly update.   If the FOIPA has been closed the notice will indicate that appropriate correspondence has been mailed to the address on file.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following web site:  https://www.foiaonline.gov/foiaonline/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Information Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC,

     Plaintiff,

          v.

U.S DEPARTMENT OF JUSTICE,

     Defendant.

Civil Action No. 1:19-cv-02743-CJN

# **Exhibit C**



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

March 17, 2020

William F. Marshall
c/o Chris Fedell & Paul J. Orfanedes
Judicial Watch, Inc
425 Third Street, SW
Suite 800
Washington, DC 20024

FOIPA Request No.: 1442326
Civil Action No.: 19-CV-02743
Subject: The Electronic Communication Which Led to
the Initiation of the Counterintelligence Investigation
of the Trump Campaign (as Described in the 4/4/18
Letter from Nunes to Wray and Rosenstein)

Dear Mr. Marshall:

        The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.   Below you will find checked boxes under applicable statutes for the exemptions asserted to protect information exempt from disclosure.   The appropriate exemptions are noted on the processed pages next to redacted information.   In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely pursuant to applicable exemptions.   An Explanation of Exemptions is enclosed to further explain justification for withheld information.

| **Section 552** | | **Section 552a** |
|---|---|---|
| ☑ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| 50 U.S.C., Section 3024 (i)(1) | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☑ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

        4 pages were reviewed and 4 pages are being released.

        Please see the paragraphs below for relevant information specific to your request and the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

        ☐   Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

                ☐   This information has been referred to the OGA(s) for review and direct response to you.
                ☐   We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.   **"Part 1"** of the Addendum includes standard responses that apply to all requests.   **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals. **"Part 3"** includes general information about FBI records that you may find useful.   Also enclosed is our Explanation of Exemptions.

Although your request is in litigation, we are required by law to provide you the following information:

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.   Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter.   Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

☑   See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Information Management Division

Enclosure(s)

In response to your Freedom of Information/Privacy Acts (FOIPA) request, enclosed is a processed copy of Bates Stamped documents, FBI (19-cv-2743)-1 through FBI (19-cv-2743)-4. The enclosed documents represent the final release of information responsive to your request.

You were previously advised we are consulting with another agency concerning information related to your litigation.   This consultation is complete and the enclosed material is being released to you with the appropriate exemption noted next to the redacted information pursuant to Title 5, United States Code, Section(s) 552/552a exemptions (b)(1) and (b)(6).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC,

      Plaintiff,

             v.                              Civil Action No. 1:19-cv-02743-CJN

U.S DEPARTMENT OF JUSTICE,

      Defendant.

# **<u>Exhibit D</u>**

*Judicial Watch, Inc v. U.S. Department of Justice*
1:19-cv-2743 (CJN)
United States District Court for the District of Columbia

## Exemption Application Index

**Document Description:**
Four page Electronic Communication dated 7/31/2016 documenting the opening of the FBI's CROSSFIRE HURRICANE investigation. All four pages were released in part. Information was withheld by FBI pursuant to FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E). Information was also withheld by the Department of State ("DOS") pursuant to FOIA Exemptions 1 and 6.

| SUMMARY OF FOIA EXEMPTION JUSTIFICATION CATEGORIES | | | | | |
|---|---|---|---|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** | **Pg. 1** | **Pg. 2** | **Pg. 3** | **Pg. 4** |
| **EXEMPTION 1** | **CLASSIFIED INFORMATION** | | | | |
| (b)(1) per DOS | Withheld per Department of State | | | x | |
| **EXEMPTION (b)(3)** | **INFORMATION PROTECTED BY STATUE** | | | | |
| (b)(3)-1 | NSA of 1947 [50 USC Section 3024(i)(1)] | x | x | x | x |
| **EXEMPTION (b)(6) and EXEMPTION (b)(7)(C)** | **CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY AND UNWARRANTED INVASION OF PERSONAL PRIVACY** | | | | |
| (b)(6)-1 and (b)(7)(C)-1 | Names and Identifying Information (including telephone numbers, duty location) of FBI Special Agents/Professional Staff | x | x | x | |
| (b)(6) per DOS | Withheld per DOS | | x | x | |

| **EXEMPTION (b)(7)(D)** | **CONFIDENTIAL SOURCE INFORMATION** | | | | |
|---|---|---|---|---|---|
| (b)(7)(D)-1 | Identity of, and Information Provided, by a Foreign Government Agency Requesting Express Confidentiality | | x | x | |
| **EXEMPTION (b)(7)(E)** | **INVESTIGATIVE TECHNIQUES AND PROCEDURES** | | | | |
| (b)(7)(E)-1 | Sensitive File Number [cited in conjunction with (b)(3)-1] | x | x | x | x |
| (b)(7)(E)-2 | Identity of Specific FBI Counterintelligence Squads (pg. 1) and the Location of a Specific FBI Legat Office (pgs. 1-3) | x | x | x | |
| (b)(7)(E)-3 | Date/Type of Investigation (Preliminary / Full Investigations) | x | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC,

      Plaintiff,

              v.

U.S DEPARTMENT OF JUSTICE,

      Defendant.

Civil Action No. 1:19-cv-02743-CJN

# **Exhibit E**

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-21-2019 BY[        ]NSICC

b6 -1
b7C -1
b7E -1

FD-1057 (Rev. 5-8-10)                    (U)    ~~SECRET~~ / ~~/OCON/NOFORN~~

# FEDERAL BUREAU OF INVESTIGATION
### Electronic Communication

(U)   **Title:** ~~(S//OC/NF)~~ CROSSFIRE HURRICANE          **Date:** 07/31/2016

b6 -1
b7C -1

**CC:**

STRZOK PETER P II

**From:** COUNTERINTELLIGENCE

b7E -2

    **Contact:** STRZOK PETER P II, [        ]

**Approved By:** STRZOK PETER P II

**Drafted By:** STRZOK PETER P II

**Case ID #:** [        ]   ~~(S//OC/NF)~~ CROSSFIRE HURRICANE;
                            FOREIGN AGENTS REGISTRATION ACT -
                            RUSSIA;
                            SENSITIVE INVESTIGATIVE MATTER

b3 -1
b7E -1

~~DOCUMENT RESTRICTED TO CASE PARTICIPANTS~~

This document contains information that is restricted to case participants.

(U)  **Synopsis:** ~~(S//OC/NF)~~ Opens and assigns investigation

            Reason: 1.4(b)
            Derived From: FBI
            NSISC-20090615
            Declassify On: 20411231

**Full Investigation Initiated:** 07/31/2016

**Details:**

(U)   ~~(S//NF)~~ An investigation is being opened based on information received
from Legat [        ] on 07/29/2016.  The text of that email follows:

b7E -2

          (U)   ~~SECRET~~ / ~~/ORCON/NOFORN~~

FBI(19-cv-2743)-1

~~SECRET~~// ~~ORCON/NOFORN~~

(U)

(U) Title: (X//OC/NF) CROSSFIRE HURRICANE                                    b3 -1
Re: [        ] 07/31/2016                                                    b7E -1

BEGIN EMAIL

(U//~~FOUO~~) Legat [        ] information from [                    ] Deputy     b7E -2
Chief of Mission                                                            b6 per DOS

Synopsis:

(U//~~FOUO~~) Legat [        ] received information from the [            ]      b7E -2
[        ] Deputy Chief of Mission related to the hacking of the Democratic   b6 per DOS
National Committee's website/server.

Details:

(X//REL TO USA, [    ]) On Wednesday, July 27, 2016, Legal Attaché (Legat)     b6 -1
[                      ] was summoned to the Office of the Deputy Chief of    b7C -1
Mission (DCM) for the [        ] who                                          b7D -1
will be leaving [            ] post Saturday, July 30, 2016 and set to soon    b7E -2
thereafter retire from government service, advised [    ] was called by       b6 per DOS
[                          ] about an urgent matter requiring an in person
meeting with the U.S. Ambassador. [Note: [                    ] The
[                          ] was scheduled to be away from post until mid-August,
therefore [            ] attended the meeting.

(X) [              ] advised that [                ] government
had been seeking prominent members of the Donald Trump campaign in
which to engage to prepare for potential post-election relations should
Trump be elected U.S. President. One of the people identified was
George Papadopolous (although public media sources provide a spelling
of Papadoupolos), who was believed to be one of Donald Trump's foreign
policy advisers. Mr. Papadopoulos was located in [        ] so the
[                          ] met with him on several occasions,
with [            ] attending at least one of the meetings.

(X) [              ] recalled [                    ]
of the meetings between Mr. Papadopolous and [        ]
concerning statements Mr. Papadopolous made about suggestions from the
Russians that they (the Russians) could assist the Trump campaign with
the anonymous release of information during the campaign that would be

~~SECRET~~// ~~ORCON/NOFORN~~

(U)

2

(U) SECRET//ORCON/NOFORN

b3 -1
b7E -1

(U) Title: S//OC/NF CROSSFIRE HURRICANE
Re: [          ] 07/31/2016

b6 -1
b7C -1
b7D -1
b6 per DOS

damaging to Hillary Clinton. [          ] provided a copy of the
reporting that was provided to [     ] from [          ] to Legat [       ] The
text is exactly as follows:

[Begin Text]

b7D -1
b7E -2

[ ]/[          ] 5. Mr Papadopolous [                                    ]
[                                                                          ]
[                          ] also suggested the Trump team had received some
kind of suggestion from Russia that it could assist this process with
the anonymous release of information during the campaign that would be
damaging to Mrs Clinton (and President Obama). It was unclear whether
he or the Russians were referring to material acquired publicly or
through other means. It was also unclear how Mr Trump's team reacted to
the offer. We note the Trump team's reaction could, in the end, have
little bearing of what Russia decides to do, with or without Mr Trump's
cooperation.

[End Text]

[ ]/[                                                                       ]
[                                                                          ]
[                                                                          ]

(S)

b6 -1
b7C -1
b7D -1
b7E -2
b1 per DOS

[ ]/[        ] Legat requests that further action on this information
should consider the sensitivity that this information was provided
through informal diplomatic channels from [                    ] to the U.S.
Embassy's DCM. It was clear from the conversation Legat [       ] had with
DCM that [          ] knew follow-up by the U.S. government would be
necessary, but extraordinary efforts should be made to protect the
source of this information until such a time that a request from our
organization can be made to [                          ] to obtain this
information through formal channels.

END EMAIL

(U) [ ]/OC/NF) Based on the information provided by Legat [       ] this
investigation is being opened to determine whether individual(s)

b7E -2

(U) SECRET//ORCON/NOFORN

3

{U}

~~SECRET//ORCON/NOFORN~~

{U}  Title: ~~(S//OC/NF)~~ CROSSFIRE HURRICANE

b3 -1
b7E -1

Re: [                    ]  07/31/2016

associated with the Trump campaign are witting of and/or coordinating
activities with the Government of Russia.

◆◆

{U}

~~SECRET//ORCON/NOFORN~~

4

FBI(19-cv-2743)-4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC,

     Plaintiff,

          v.

U.S DEPARTMENT OF JUSTICE,

     Defendant.

Civil Action No. 1:19-cv-02743-CJN

# **<u>Exhibit F</u>**

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,                    )
                                         )
                                         )
     Plaintiffs,                         )
           v.                            )          Civ. Action No. 1:19-cv-02743
U.S. DEPARTMENT OF JUSTICE               )
                                         )
                                         )
                                         )
     Defendants.                         )
-------------------------------------------------

## DECLARATION OF ERIC F. STEIN

Pursuant to 28 U.S.C. § 1746, I, Eric F. Stein, declare and state as follows:

1.      I am the Director of the Office of Information Programs and Services ("IPS") of

the United States Department of State (the "Department" or "State") and have served in this

capacity since January 22, 2017.  Previously, I served as the Acting Director since October 16,

2016, and as the Acting Co-Director since March 21, 2016.  I am the Department official

immediately responsible for responding to requests for records under the Freedom of Information

Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other records

access provisions.  As the Director of IPS, I have original classification authority and am

authorized to classify and declassify national security information.  Prior to serving in my current

capacity, I worked directly for the Department's Deputy Assistant Secretary ("DAS") for Global

Information Services ("GIS") and served as a senior advisor and deputy to the DAS on all issues

related to GIS offices and programs, which include IPS.

2.     The core responsibilities of IPS include: (1) responding to records access requests made by the public (including under the Freedom of Information Act, the Privacy Act, and the mandatory declassification review requirements of Executive Order No. 13,526 of December 29, 2009, governing classified national security information), by members of Congress, by other government agencies, and those made pursuant to judicial process such as subpoenas, court orders, and discovery requests; (2) records management; (3) privacy protection; (4) national security classification management and declassification review; (5) corporate records archives management; (6) research; (7) operation and management of the Department's library; and (8) technology applications that support these activities.

3.     I am familiar with the efforts of Department personnel to process the FOIA request that is the subject of this litigation. I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties.

4.     This declaration explains the withholdings that the Department requested the Federal Bureau of Investigation ("FBI") make on its behalf with respect to one document that FBI sent to the Department for consultation and review of its equities contained therein. A description of the Department's administrative processing of the request, the information withheld in the document, and the applicable exemptions applied to those withholdings is provided below.

## I. ADMINISTRATIVE PROCESSING OF FBI REFERRAL REQUEST

5.     By letter submitted to the Department by email on January 21, 2020 (Exhibit 1), FBI referred one document to the Department for review and return back to FBI. FBI informed the Department that the document was responsive to a FOIA request subject to this litigation

2

filed on September 13, 2019, by Judicial Watch, Inc.  The Department assigned this request Case Control Number CL-2020-00006.

6.        By letter dated March 9, 2020 (Exhibit 2), the Department informed FBI that it had completed its review of the document and requested that portions of the document be withheld pursuant to FOIA Exemptions 1 and 6, 5 U.S.C §§ 552(b)(1) and (b)(6).

7.        The document is a four-page Federal Bureau of Investigation electronic communication opening an investigation into whether individuals associated with the Trump campaign were witting of and/or coordinating activities with the Government of Russia.  The document contains information received from a Deputy Chief of Mission ("DCM") and informal diplomatic channels relating to the hacking of the Democratic National Committee's website/server and leading to the investigation.  The Department withheld certain portions of the document regarding the informal diplomatic channels under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to sections 1.4(b) and (d) of Executive Order 13,526.  In addition, the Department withheld personally identifiable information regarding the DCM under FOIA Exemption 6, 5 U.S.C § 552(b)(6), because release of this information would subject the person to harassment and unwanted attention if the DCM's identity were released.  Such release would, therefore, harm the individual's privacy interests, including the privacy interest in conducting official duties free from harassment.

## II.  FOIA EXEMPTIONS CLAIMED

### FOIA Exemption 1

8.        5 U.S.C. § 552(b)(1) states that the FOIA does not apply to matters that are:

> specifically authorized under the criteria established by an
> Executive order to be kept secret in the interest of national defense
> or foreign policy and are in fact properly classified pursuant to
> such executive order.

3

9.      The Department withheld information in the one document referred, as described in further detail below, pursuant to Exemption 1, 5 U.S.C. § 552(b)(1).

10.     Based upon my personal review of this document and information furnished to me in the course of my official duties, I have determined that the information withheld under Exemption 1 continues to meet the classification criteria of Executive Order 13,526 and that the Department has not previously authorized or officially acknowledged public release of this information.

11.     For information to be properly classified and withheld from disclosure pursuant to Exemption 1, the information must meet all of the following requirements set forth in Section 1.1(a) of E.O. 13,526:

> (1)     an original classification authority is classifying the information;
>
> (2)     the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (3)     the information falls within one or more of the categories listed in section 1.4 of [E.O. 13,526]; and
>
> (4)     the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

12.     The portion of this document withheld pursuant to Exemption 1 reflects information classified at the SECRET level.  Section 1.2 of Executive Order 13,526 states:

> "Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe.

13.     Section 6.1(l) of Executive Order 13,526 defines "damage to the national security" as follows:

4

"Damage to the national security" means harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information.

14.     Information withheld in this case under Exemption 1 is properly classified

pursuant to Sections 1.4(b) and (d) of Executive Order 13,526.  Section 1.4 provides:

Information shall not be considered for classification unless . . . it pertains to one or more of the following: . . . (b) foreign government information; . . . (d) foreign relations or foreign activities of the United States, including confidential sources . . . .

### Section 1.4(b) – Foreign Government Information

15.     Section 6.1(s) of E.O. 13,526 defines "foreign government information" as

follows:

(1) information provided to the United States Government by a foreign government or governments, an international organization of governments, or any element thereof, with the expectation that the information, the source of the information, or both, are to be held in confidence;

(2) information produced by the United States Government pursuant to or as a result of a joint arrangement with a foreign government or governments, or an international organization of governments, or any element thereof, requiring that the information, the arrangement, or both, are to be held in confidence . . . .

16.     Section 1.1(d) of E.O. 13,526 states:

The unauthorized disclosure of foreign government information is presumed to cause damage to the national security.

17.     The ability to obtain information from foreign governments is essential to the

formulation and successful implementation of U.S. foreign policy.  Release of foreign

government information provided in confidence, either voluntarily by the Department or by

order of a court, would cause foreign officials to believe that U.S. officials are not able or willing

5

to observe the confidentiality expected in such interchanges.  Governments could reasonably be expected to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, and in general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest.  In view of the important relationship between the United States and the foreign government identified in the responsive document, protecting foreign government information, and in some cases even the fact that information has been provided, is important to our relationship and conduct of foreign relations. Foreign government information withheld in this case is, therefore, currently and properly classified pursuant to Section 1.4(b) of E.O. 13,526.

### Section 1.4(d) – Foreign Relations or Foreign Activities of the United States

18.    Confidentiality is a vital aspect of successful foreign relations.  This includes the confidentiality of diplomatic exchanges and information about the nature of other countries' engagement with the United States, when undertaken with the expectation of confidentiality.  It also includes the ability of U.S. Government officials to engage in non-public evaluations of the United States' relationships with specific countries and leaders without fear that the information could become public and cause damage to those very relationships.  Mutual trust between governments in this realm is crucial to U.S. foreign relations.  The inability of the United States to maintain confidentiality in its diplomatic exchanges would inevitably chill relations with other governments and could reasonably be expected to cause serious damage U.S. national security by diminishing our access to important sources of information.  Internally within the U.S. Government, it is likewise essential that the Department be able to provide policymakers with candid assessments of the various nations and entities with which the United States conducts foreign relations.  Disclosure of the Department's internal assessments of bilateral and

6

multilateral relations could reasonably be expected to damage the mutual trust upon which successful foreign relations depends.

19.     Some of the information withheld pursuant to Exemption 1 in this case is classified under Section 1.4(d) of E.O. 13,526.  This information concerns both confidential sources and sensitive aspects of U.S. foreign relations, including, in particular, issues related to identifying potential threats to U.S. national security.  Release of this classified information has the potential to inject friction into, or cause damage to, a bilateral relationship with a country whose cooperation is important to U.S. national security.  Moreover, failure to preserve the expected confidentiality could jeopardize future access not only to the sources of the withheld information but also to others who might provide sensitive information to U.S. officials that is important to U.S. national security interests.  For these reasons, the Department withheld certain information in this case that is currently and properly classified pursuant to Section 1.4(d) of E.O. 13,526.

20.     In my role as an original classification authority, I have determined that the information withheld pursuant to Exemption 1 is under the control of the United States Government, falls within one or more sections of E.O. 13,526, and requires classification at the SECRET level because its unauthorized disclosure reasonably could be expected to cause serious damage to the national security.  For the foregoing reasons, the information in this subject document is exempt from release under Exemption 1.

### FOIA Exemption 6

21.     5 U.S.C. § 552(b)(6) states that the FOIA does not apply to:

> ...personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy....

7

22.     Courts have interpreted the language of Exemption 6 broadly to encompass all information that applies to an individual without regard to whether it was located in a particular type of file.  Inasmuch as information withheld under FOIA Exemption 6 identifies a specific individual, a personal privacy interest exists in the information.  I am required, therefore, to determine whether there exists any public interest in disclosure and, if a public interest is implicated, to weigh any such interest against the privacy interest to determine whether disclosure would constitute a clearly unwarranted invasion of personal privacy.

23.     In this case, the Department withheld information that would reveal the identity and post of a specific Department employee who is discussed in relation to providing information related to the hacking of the Democratic National Committee's website/server.  In light of the impeachment proceedings held late last year and early this year, the high-profile nature of Russia-related policy matters, and the intensive and frequently hostile nature of the discussion of these matters online and in other forums, there is a substantial risk that an employee who appears in the responsive document—particularly in the context of relaying information about the hacking—could face harassment and unwanted attention if his or her identity were released.  Such release would therefore harm the individual's privacy interests, including his or her privacy interest in conducting official duties free from harassment.  The Department has released the employee's non-identifying title where it appears in the document but has withheld information that would reveal the employee's identity or location.

24.     As to all of the information withheld pursuant to FOIA Exemption 6, I have concluded that (1) an individual has a privacy interest in the information withheld; and (2) disclosure of the information would not serve the "core purpose" of the FOIA, *i.e.*, it would not disclose information about "what the government is up to."  Accordingly, I have determined that

8

the privacy interests in the withheld information clearly outweigh any public interest in

disclosure of such personal information.  Thus, release of this information would constitute a

clearly unwarranted invasion of personal privacy, and the information is, therefore, exempt from

release under FOIA Exemption 6, 5 U.S.C. § 552(b)(6).

### III. CONCLUSION

25.    In summary, the Department reviewed one document referred by the FBI, and

determined that some portions of the document must be withheld under FOIA Exemptions 1 and

6.  The Department has carefully conducted a line-by-line review of the document for reasonable

segregation, and determined that no segregation of additional meaningful information in the

document could be made without disclosing information warranting protection under the law.


\* \* \*

I declare under penalty of perjury that the forgoing is true and correct to the best of my

knowledge.

Executed this  19th  day of November 2020, Washington D.C.


Eric F. Stein

9



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

January 10, 2020

*VIA EMAIL - URGENT PENDING LITIGATION*

To:    Attn: Eric Stein **(Via Email)**
       Office of Information Programs and Services
       A-GIS-IPS-RL-RC
       U.S. Department of State
       SA 2
       Washington, DC 20522

From:   David M. Hardy, Section Chief
        Record/Information Dissemination Section
        Information Management Division
        170 Marcel Drive
        Winchester, VA  22602-4843

Subject: FOIA Request of William F. Marshall
         FBI FOIA Request Number: 1442326-000
         Subject: The Electronic Communication Which Led to the Initiation of the Counterintelligence Investigation
         of the Trump Campaign (as Described in the 4/4/18 Letter from Nunes to Wray and Resenstein)
         *Civil Action Number:19-cv-2743*

        While reviewing records responsive to the above FOIA/PA request, the FBI located the enclosed FBI document(s) containing information concerning your agency (Attachment A).  Please review the bracketed information and **return the document(s) to us**, making any deletions you deem appropriate, citing the exemption(s) claimed.  In the event exemptions are claimed, your office may need to provide a declaration supporting the claimed exemptions.  Please note the enclosed document(s) also contain(s) deletions made by this Bureau.  The appropriate exemptions appear next to the redacted information.

        A copy of the requester's initial letter, the complaint, and any other significant correspondence is enclosed for your convenience (Attachment B).  If you have any questions concerning this referral, please contact the Litigation Support Unit at (540) 868-4852.  FBI FOIA Request Number 1442326-000 should be utilized during any consultation with the FBI concerning this referral.

        This matter involves pending litigation.  If possible, we request your agency's response on or before January 23, 2019.  We thank you in advance for your immediate attention to this matter.

Enclosures



**United States Department of State**

*Washington, D.C. 20520*

March 9, 2020

DOS Case No.:    CL-2020-00006
FBI Case No.:    1442326-000
Requester:    William F. Marshall

TO:        Trudy L. Castro,
             Litigation Support Expert Reviewer,
             Litigation Support Unit
             Tlcastro@fbi.sgov.gov

FROM:    Susan C. Weetman
             Chief, Programs & Policies Division
             Office of Information Programs & Services

SUBJECT:    Reply to Request for Consultation

REF:        Judicial Watch v. DOJ 19-cv-2743

We have reviewed 1 document (4 pages) attached to your January 21, 2020 memorandum. Our recommendations with respect to the State Department equities, if any, are marked on the document. Any recommended excisions are also indicated, and the exemptions are noted.

If you requested us to limit our review to marked portions of the document, our review and comments are limited.

If you have any questions, please contact the case analyst, Ennelle Debrosse, at 202-485-2249.

Attachments:
        1 document

*Judicial Watch, Inc. v. U.S. Department of Justice*
Stein Declaration
Exhibit 02
No. 19-cv-02743