**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| | ) | |
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | Case No. 19-2743-CJN |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

---

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(ECF No. 19) AND OPPOSITION TO SUPPLEMETNAL CROSS MOTION FOR
SUMMARY JUDGMENT (ECF No. 26)[1]**

In this Freedom of Information Act ("FOIA") case, the Federal Bureau of Investigation

"(FBI"), a component of Defendant U.S. Department of Justice ("Defendant"), released a

redacted four-page document to Plaintiff.  Defendant invoked Exemptions 3 and 7(E) to redact

FBI sensitive file numbers and the identity of FBI counter-intelligence squads and specific legat

office.  Defendant also excised from the released record personal identifying information of

special agents and professional staff under Exemptions 6 and 7(C).  Defendant applied

Exemption 7(D) to withhold foreign government source's information and identity.  Finally, at

the State Department's request, Defendant invoked Exemption 1 to redact information relating to

---

[1]     Plaintiff's Supplemental Opposition (ECF No. 25) and Supplemental Cross Motion for
Summary Judgment (ECF No. 26) are identical and they subsume the arguments raised in
Plaintiff's initial opposition and cross summary judgment motion (ECF Nos. 20, 21).  Therefore,
Defendant will only address Plaintiff's supplemental submissions herein and will only refer to
Plaintiff's initial filings when necessary.

Furthermore, for ease of references, Defendant shall refer and cite to Plaintiff's
supplemental cross motion for summary judgment (ECF No. 26) in this brief. That document
shall be referred to as "Plaintiff's Cross Motion" and cited as "CMSJ."

informal diplomatic channels.

Plaintiff's sparse response fails to provide any legal or factual bases to undermine Defendant's invocation of Exemptions 3, 6, 7(C), 7(D), and 7(E) as well Exemption 1, at the State Department's request, to redact certain information from the four-page record at issue in this case. Accordingly, the Court award summary judgment in Defendant's favor and deny Plaintiff's cross and supplement cross summary judgment.

## PROCEDURAL BACKGROUND

Defendant initially moved for summary judgment arguing that the FBI appropriately invoked Exemptions 3, 6, 7(C), 7(D), and 7(E) to redact certain information from a four-page record at issue here. *See* Def. MSJ (ECF No. 19). At the State Department's behest, Defendant applied Exemption 1 to withhold certain information for national defenses purposes. *Id.* Plaintiff submitted its initial opposition and also moved for cross summary judgment. *See* ECF Nos. 20 & 21. In response to Plaintiff's submissions, Defendant re-processed the four-page record to release one name on the "cc line" and correct the imprinting of exemption numbering to match with the redactions. *See* Joint Status Report (ECF No. 24). Consequently, Plaintiff submits its "supplemental" opposition and cross motion for summary judgment to address the re-processed record. *See* CMSJ at 1-3 (ECF No. 26).

## ARGUMENT

### I.  Exemptions 6 and 7(C)

Defendant's Motion for Summary Judgment explained that the FBI applied Exemptions 6 and 7(C) to redact information of its special agents and professional staff. Def. MSJ at 9-14; *see also Vaughn* Index. Plaintiff, however, challenges these redactions arguing that "the identities of FBI personnel and government officials involved in the Crossfire Hurricane investigation are

well-documented in open-source media and publicly available." CMSJ at 4.  This argument
misses the point.

As an initial matter, Plaintiff has not provided any evidence showing that DOJ or FBI
previously released the redacted names and identifying information contained within this
particular record.  *See* Second Declaration of Michael Seidel ("Second Seidel Decl.") ⁋ 3.
Indeed, if the disclosure (in context to the information sought by Plaintiff) was made by the
government, *i.e.* prior official or FOIA disclosure, or by a person with authority (like a speech by
the President), then there has been a waiver.  *ACLU v. CIA*, 710 F.3d 422 (D.C. Cir. 2012).  If
the names were disclosed in other unofficial channels, or is just generally already known to
Plaintiff, then there is no wavier and it can still be redacted.  *Dow Jones & Co. v. Department of
Justice*, 917 F.2d 571, 577 (D.C. Cir. 1990); *Mobley v. C.I.A.,* 806 F.3d 568, 583 (D.C. Cir.
2015).  Under the law, Defendant's redactions under Exemption 6 and 7(C) has continuing
vitality.

Next, Plaintiff maintains that, because of the intense publicity surrounding the Crossfire
Hurricane investigation, the disclosure would not subject these individuals to harassment or
embarrassment.  *Id.* at 4-5.  Plaintiff also argues that the significance of that investigation
outweighs any privacy interest involved.  *Id.* at 5.  Plaintiff fails to cite a single authority to
support its untenable arguments and thus fails to show that the public interest outweighs the
substantial privacy interest in this case.  In fact, contrary to Plaintiff's assertion, "[i]n order to
trigger the balancing of public interests against private interests, a FOIA requestor must (1)
'show that the public interest sought to be advanced is a significant one, an interest more specific
than having the information for its own sake,' and (2) 'show the information is likely to advance
that interest."  *Boyd v. Criminal Division of U.S. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir.

2007) (citing *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).  Courts have construed the public interest component narrowly, noting that the public interest "must be assessed in light of FOIA's central purpose," and that purpose "is not fostered by disclosure about private individuals that is accumulated in various government files but that reveals little or nothing about an agency's conduct."  *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) (quotation marks and citation omitted).   "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm*, 489 U.S. at 773).  Details that "reveal little or nothing about an agency's own conduct" are not part of the public interest for purposes of Exemption 7(C).  *Blanton v. U.S. Dep't of Justice*, 63 F. Supp. 2d 35, 41 (D.D.C. 1999) (quoting *Davis*, 968 F.2d at 1282).[2]

        Here, Plaintiff fails to provide any information or evidence establishing how a significant public interest is advanced by disclosing these individuals' identities.  Second Seidel Decl. ₱ 3.  Plaintiff simply maintains that disclosure of these individuals' names and their information is in the public interest (CMSJ at 4-5) but simply fails to explain why and how (Second Seidel Decl. at ₱ 3). *See Favish*, 541 U.S. at 172 (observing that it is the FOIA requester's obligation to articulate a public interest sufficient to outweigh the individuals' privacy interest, and the public

---

[2]        As discussed in Defendant's opening brief, Exemption 7(C)'s privacy language is broader than its counter-part in Exemption 6 and, therefore, it is not necessary to separately consider Exemption 6 if the information falls squarely under the protection of Exemption 7(C)).  *See* Def. MSJ at 12 n. 7 (citing *Roth v. U.S. Dep't of Justice,* 642 F.3d 1161, 1173 (D.C. Cir. 2011) (finding "no need to consider Exemption 6 separately [where] all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)")).  Therefore, Defendant's analyses herein will focus on withtholdings under Exemption 7(C).

interest must be significant).  In fact, there is no public interest to be served in "the disclosure of these individual's names and identifying information" and releasing the information would not "shed light on or significantly increase the public's understanding of the operations and activities of the FBI."  Second Seidel Decl. ¶ 3.

Finally, Plaintiff argues that it is "disingenuous" of the State Department to redact the identity and post of a State Department employee under Exemption 6 given the "abundance of publicly available information" on the Crossfire Hurricane investigation.  *See* CMSJ at 5.  This argument is also misplaced.  Under the law, Plaintiff bears the burden of establishing that disclosure of personal information would serve a cognizable public interest.  *Carter v. United States Dep't of Commerce*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987).  The "only relevant public interest to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] significantly to public understanding of the operations or activities of the government."  *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (internal citation omitted) (internal citation and quotation marks omitted).  The "simple invocation of a legitimate public interest … cannot itself justify the release of personal information.  Rather, a court must first ascertain whether that interest would be served by disclosure."  *Hopkins v. HUD*, 929 F.2d 81, 88 (2 Cir. 1991); *see also Carter*, 830 F.2d at 391 and n.13 (establishing public interest is the requester's burden).

In this case, without citing any authority, Plaintiff merely asserts that redacting the State employee's information would perpetuate secrecy and that, given the well-known publicity surrounding the matter, the privacy interest is lessened.  *See* CMSJ at 5.  Contrary to Plaintiff's assertion, a simple assertion of public interest does not justify the release of "the identity and post of a specific Department employee who is discussed in relation to providing information

related to the hacking of the Democratic National Committee's website/server."  Second

Declaration of Eric F. Stein ("Second Stein Decl.") ⁋ 10.  Specifically, the State Department

withheld the information because "the impeachment proceedings held in 2019 and 2020, the

high-profile nature of Russia-related policy matters, and the intensive and frequently hostile

nature of the discussion of and speculation about these matters online and in other forums" pose

"a substantial risk that an employee who appears in the responsive document --  particularly in

the context of relaying information about the hacking -- could face significant harassment and

unwanted attention if his or her identity were released." *Id.*  Moreover, "the individual's name

and post are being identified in the context of the initiation of the FBI's 'Crossfire Hurricane'

investigation, the high-profile counterintelligence investigation into Russian interference in the

2016 Presidential election" and that the "FBI has not officially acknowledged this individual's

involvement with the investigation or his or her location" only enhance both the individual's

privacy interest regarding being involved in the initiation of the investigation as well as the

likelihood that release would engender additional stigma and speculation regarding the specific

individual and his or her location." *Id.*  In that vein, after weighing the public and privacy

interests in the redacted information, State "determined that the public interest in the official role

of the individual who is identified in an FBI record regarding the initiation of the Crossfire

Hurricane investigation as having provided information related to the hacking of the Democratic

National Committee's website/server- Deputy Chief of Mission-outweighs the privacy interest.

Accordingly, the Department has released that information." *Id.* ⁋ 11.  On the other hand, using

the same balancing test, State determined that "there is limited public interest in knowing the

specific name and location of the individual because that detail alone sheds little light on the

operations of the U.S. Government, while the individual has a strong privacy interest in being

free from undue harassment in relation to a high-profile investigation." *Id*. ¶¶ 11, 12. Accordingly, State applied Exemption 6 to withhold the identity and post of a specific Department employee at issue here.

## II. Exemption 7(D)

Defendant invoked Exemption 7(D) to protect "the identity of, and information provided by, a Foreign Government to the FBI under express grants of confidentiality." *See* Def. MSJ at 15 (citing Seidel Decl. ¶ 27). Plaintiff initially conceded that there was an expressed assurance of confidentiality; however, Plaintiff now argues that Defendant failed to provide that same level of assurances in the "re-processed record." CMSJ at 6. Plaintiff further argues that, given the publicly available information surrounding the matter, the confidentiality issue is moot. *Id.* This argument strained logic here.

As Plaintiff correctly pointed out, Defendant reconsidered its withholdings and re-processed the four-page record in this case. CMSJ at 2. Defendant released one line of previously withheld information by disclosing the name of Jonathan C. Moffa on the "cc line." *Id.* The re-processed record also provided more accurate imprinting of the FOIA exemption numbering to match up with the redactions. *Id.* Those are the only changes in the re-processed record and that exercise did not affect the "assurance of confidentiality" provided to the foreign government relating to the source of the information. Second Seidel Decl. ¶ 4. In fact, Defendant continues to stand by the rationale for withholding "the identity of the source and the information provided by the source" under an express assurance of confidentiality." *Id.* (citing Seidel Decl. ¶¶ 24-29). Plaintiff's terse argument fails to undermine Defendant's invocation of Exemption 7(D) to protect the confidential source in this case.

### III. Exemption 7(E) – Investigative Techniques

Defendant excised methods and techniques involving the location and identity of an FBI squad and legat location relating to the Crossfire Hurricane investigation because "[d]isclosure of the location of the squad and legat involved in the opening of this investigation could reveal the identity of foreign governments cooperating with FBI to provide information related to targets, the physical areas of interest of the investigation."  Def. MSJ at 17 (citing Seidel Decl. ¶ 37).[3] Plaintiff currently argues that Defendant's rationale for withholding the contested information does not apply because "[t]he crime here is political in nature. The location of the squads or legats involved is irrelevant to the nature of the crime being investigated."  CMSJ at 7. Plaintiff's argument lacks merit.

Exemption 7(E) applies broadly and allows agencies to withhold information that "would provide insight into its investigatory or procedural techniques."  *Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16, 28–29 (D.D.C. 2011); *see also Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting that Exemption 7(E) offers "a relatively low bar for the agency to justify withholding" information).  Given the "relatively low bar" under Exemption 7(E), Defendant correctly withheld the location and identity of an FBI squad and legat location involved in the investigation of Crossfire Hurricane.  Indeed, "FBI squads are highly specialized

---

[3]     Plaintiff initially conceded that the withholding was adequately supported based on Defendant's initial exemption markings; however, after reviewing the re-processed record, Plaintiff now challenges Defendant's redactions of the "identity of FBI Counter-Intelligence Squads and Location of Specific Legat Office."  CMSJ at 6.  In any event, Plaintiff does not challenge Defendant's application of Exemption 7(E) to withhold "sensitive file numbers." *Id*. at n. 2.  Furthermore, Plaintiff's Opposition did not refute Defendant's use of Exemption 3 to redact two files containing sensitive file numbers that contain intelligence sources and methods. *See* Def. MSJ at 6-8 (describe the application of Exemption 3 to certain redactions in this case). In light of Plaintiff's apparent concessions, the Court should grant summary judgment in Defendant's favor on these issues.

and are involved in deployment of specific investigative techniques and procedures. Disclosure of locations, in the context of a particular investigation, provides insight into available resources, capabilities and/or vulnerabilities." Second Seidel Decl. ¶ 6. Release of the information "reveals the availability of specific resources at that location [and] their involvement in the context of a particular investigation," which would disclose non-public details about techniques and procedures deployed in certain investigative circumstances. *Id.* Furthermore, legats are operated in foreign countries, "disclosing the identity of a legat in the context of a specific investigation, could reveal the identity of a foreign government and its cooperation - or level of cooperation - with FBI." *Id.* At base, Defendant "withheld the involvement of a particular squad and legat to avoid disclosing coordination with a specific foreign government, a valuable tool utilized by the FBI." Id. at ¶ 7. "Armed with knowledge of where the FBI is able to coordinate with foreign governments, criminals could use such information to adjust their behavior and activities to circumvent FBI law enforcement efforts in those locations." *Id.* More importantly, disclosing the identity of the foreign government that chose to cooperate with the U.S. could cause a loss of a valuable tool for future investigations. *Id.* These circumstances support Defendant's use of Exemption 7(E) in this case.

## IV. **Exemption 1 – National Defense**

At the State Department's behest, Defendant invoked Exemption 1 to redact certain information to protect the disclosure of the "foreign government" and the U.S. "foreign relations" with foreign governments. Def. MSJ at 3 (citing Stein Decl. ¶ 7). Plaintiff, however, contests these withholdings arguing that the "redacted information here does not logically fit State Department's asserted exemptions." CMSJ at 8. Plaintiff's conclusory argument fails to explain how or why State's rationale fails to support the asserted Exemption 1. The dearth of

any robust argument undermines Plaintiff's challenge here.

In any event, as explained in Defendant's opening brief, the State Department "relies on Sections 1.4(b) and (d) of Executive Order 13,526, which includes among its list of classifiable materials government records that pertain 'foreign government information' and 'foreign relations or foreign activities of the United States, including confidential sources.'" Def. MSJ at 4 (citing Executive Order No. 13526, § 1.4(b) and (d), 75 Fed. Reg. 707 (Dec. 29, 2009), and Stein Decl. ¶7). The State Department explains that "[t]he withheld information reflects diplomatic discussions and would reveal cooperation with a foreign government, done with the expectation of confidentiality, on a sensitive national security topic." Second Stein Decl. ¶ 6. "It includes information classified at the SECRET level because its unauthorized disclosure reasonably could be expected to cause serious damage to the national security." *Id.* Even after re-processing the record, State maintains that "the information withheld under Exemption 1 continues to meet the classification criteria of E.O. 13,526, and the Department has not previously authorized public release of this information or officially acknowledged the information." The underlying grounds set fort in the initial Stein Declaration (ECF No. 19-3), combined with the additional explanations in the Second Stein Declaration, amply support State's reliance on Exemption 1 in this case.

### *V. In Camera* Review Is Not Warranted

Plaintiff argues that the Court should conduct an *in camera* review of the redacted record in this case because the declarations and motions are devoid of specific details to permit Plaintiff and the Court to ascertain the validity of the redactions. CMSJ at 8.[4] This argument lacks merit.

---

[4] Plaintiff made a similar argument for *in camera* review in its initial Cross Motion for Summary Judgment. *See* ECF No. 21 at 6.

As an initial matter, Plaintiff fails to explain how the twenty-one page Seidel Declaration (ECF No. 19-3, at 1-21), the *Vaughn* Index (*id.* at 35-36), and the eight-page Stein Declaration (*id.* at 43-51) fail to provide specific details in support of the redactions in this case.  In any event, whether to conduct an *in camera* review of material produced pursuant to a FOIA request is a decision that lies within the discretion of the district court.  *See, Ctr. for Auto Safety v. EPA,* 731 F.2d 16, 22 (D.C. Cir. 1984).  Courts, however, generally rule on FOIA actions based on agency declarations without *in camera* review of documents unless there is a showing of bad faith.  *Id.* at 23 ("This Circuit has repeatedly held that when the agency meets its burden [under the FOIA] by means of affidavits, *in camera* review is neither necessary nor appropriate."); *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978) (noting that although *in camera* inspection "would likely be appropriate" when there is a showing of bad faith, "the government's burden does not mean that all assertions in a government affidavit must routinely be verified by audit"). "If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents."  *Hayden v. National Sec. Agency/Central Sec. Service*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).

In this case, *in camera* review is not necessary because Defendant has adequately detailed why certain portions of the four-page record were withheld and Plaintiff's one-sentence argument fails to provide evidence of bad faith to support *in camera* review of those redactions. Indeed, in addition to the "initial" sets of declarations (Seidel Declaration and Stein Declaration), Defendant submitted two supplemental declarations herein to further expound on the rationale for the redactions in this case.   Considered collectively, these four declarations and the *Vaughn*

Index amply shed light on the grounds for the limited withholdings in this case, particularly those redactions on page 3 of the four-page record.  Accordingly, the Court should reject Plaintiff's request for an *in camera* review here.

## CONCLUSION

For the reasons set forth in Defendant's opening dispositive motion and above, the Court should deny Plaintiff's Cross Motion for Summary Judgment (ECF No. 21) and Supplemental Cross Motion for Summary Judgment (ECF No. 26).

 Dated: June 8, 2021                              Respectfully submitted,

                                                 CHANNING D. PHILLIPS
                                                 D.C. Bar #415793
                                                 Acting United States Attorney


                                                 BRIAN P. HUDAK
                                                 Acting Chief, Civil Division

                                                 By:  /s/ John C. Truong
                                                 JOHN C. TRUONG, D.C. BAR #465901
                                                 Assistant United States Attorney
                                                 555 4th Street, N.W.,
                                                 Washington, D.C. 20530
                                                 E-mail: John.Truong@usdoj.gov
                                                 *Counsel for Defendant*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

JUDICIAL WATCH, INC.                  )
                                      )
                      *Plaintiff*,    )
                                      )
        *v.*                          )        Case No. 19-2743-CJN
                                      )
U.S. DEPARTMENT OF JUSTICE,           )
                                      )
                      Defendant.      )
_____

[PROPOSED] ORDER

Upon consideration of Plaintiff's Cross Motion for Summary Judgment (ECF No. 21);

Supplemental Cross Motion for Summary Judgment (ECF No. 26), Defendant's Opposition

thereto, and the entire record herein, it is this _____ day of _____, 2021,

ORERED that Plaintiff's Cross Motion for Summary Judgment (ECF No. 21) and

Supplemental Cross Motion for Summary Judgment (ECF No. 26) are hereby DENIED.

SO ORDERED.

_____
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ———————————————— | ) | |
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *v.* | ) | Case No. 19-2743-CJN |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| *Defendant*. | ) | |
| ———————————————— | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL**
**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant respectfully responds to Plaintiff Judicial Watch, Inc.'s supplemental

statement of undisputed material facts in further support of Plaintiff's cross-motion for summary

judgment:

1. On December 14, 2020, Defendant United States Department of Justice

   ("Defendant" or "DOJ") filed a Motion for Summary Judgment in this Freedom of

   Information Act case. *See* ECF No. 19.

   **Response**:  Not disputed.

2. On January 15, 2021, Plaintiff Judicial Watch, Inc. ("Plaintiff" or "Judicial Watch")

   filed its Memorandum in Opposition to Defendant's Motion for Summary Judgment

   and Cross-Motion for Summary Judgment ("Pl.'s Intl. Opp."). *See* ECF Nos. 20 &

   21.

   **Response**:  Not disputed.

3. Upon review of the arguments raised in Plaintiff's filings, Defendant conferred with

   Plaintiff and offered to revisit the four-page document at issue to determine

whether any additional information could be released and to revise the imprinting

of the exemptions to match with the information withheld. *See* Consent Motion to

Modify November 23, 2020 Briefing Schedule, ECF No. 22.

**Response**:  Not disputed.

4.   Defendant produced a re-processed record (dated February 23, 2021) to Plaintiff on

March 2, 2021. See Declaration of Lauren M. Burke, Ex. B.

**Response**:  Not disputed.

5.   Thereafter, the parties conferred and agreed that because the initially produced

record was not clear on what exemptions Defendant was asserting over specific

information and the re-processed record clarified the previously indiscernible

application of exemptions tospecific information. *See* Joint Status Report and

Proposed Briefing Schedule, ECF No. 24.

**Response**:  Not disputed.

6.   In addition, because it only became clear which exemptions Defendant was

asserting overspecific information upon production of the re-processed record,

Plaintiff's initial Memorandum in Opposition and in Support of Cross-Motion for

Summary Judgment did not address its challenges to Defendant's assertion of

Exemptions 7(D) and 7(E) as well as adequately challenge application of

Exemptions 6 and 7(C) throughout the record. *See Id*.; *see also* Pl.'s Intl. Opp.,

ECF Nos. 20 & 21. As a result, Defendant could not adequately respond to

Plaintiff's challenges on those issues. The parties agreed the re- processed record

clarifying the application of exemptions to specific withholdings required

supplemental briefing to address those issues.  *Compare* Declaration of Lauren

M. Burke, Exs. A & B; *See* Joint Status Report and Proposed Briefing Schedule, ECF No.

24.

**Response**:  Not disputed.

Defendant further responds to Paragraphs 10-12 of "Plaintiff's Statement of Undisputed Material Facts in Support of Cross-Motion for Summary Judgment" (ECF No. 21 at 10-11) as follows:

**Response:**  Not material. Paragraphs 10-12 are excerpts of news articles in 2016 and 2019, which have relevance to this case.

Dated: June 8, 2021                              Respectfully submitted,

                                                 CHANNING D. PHILLIPS
                                                 D.C. Bar #415793
                                                 Acting United States Attorney

                                                 BRIAN P. HUDAK
                                                 Acting Chief, Civil Division


                            By:      _____//s//_____
                                                 JOHN C. TRUONG
                                                 D.C. BAR #465901
                                                 Assistant United States Attorney
                                                 555 4th Street, N.W.
                                                 Washington, D.C. 20530
                                                 Tel: (202) 252-2524
                                                 Fax: (202) 252-2599
                                                 E-mail: John.Truong@usdoj.gov
                                                 Counsel for Defendant