IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., | ) |
|     *Plaintiff*, | ) |
| v. | ) Civil Action No. 19-2743 (CJN) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
|     *Defendant*. | ) |

**PLAINTIFF'S REPLY IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judicial Watch, Inc. ("Plaintiff"), by counsel and pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, respectfully submits this reply to Defendant Department of Justice's ("Defendant") opposition ("Def.'s Opp.") to Judicial Watch's cross-motion for summary judgment.[1]

**I.      There is significant public interest in disclosing the EC in its entirety.**

Defendant questions any significant public interest in the full contents of the FBI's EC that initiated the counterintelligence investigation of former President Trump's campaign and Russian interference in the 2016 elections. *See* Def.'s Opp. at 3. Nothing could be further from the truth. Disclosure of the full EC advances the public's right to know what the government did, who was involved, and why the investigation into Trump and Russian interference was necessary. *See Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995). The FBI itself has policies and practices in place to "protect the American people from an FBI agent acting unilaterally." *See* Second Declaration of Kevin Brock, former Assistant

---

[1] Plaintiff herein refers to its initial memorandum (ECF No. 21) as "Pl.'s SJM" and its supplemental memorandum (ECF No. 26) as "Pl.'s Supp. Mem."

Director of the Directorate of Intelligence for the Federal Bureau of Investigation ("Second Brock Decl.") ¶ 7, *attached hereto as Ex. 1*:

- "The FBI is required to create an opening document usually in the form of an Electronic Communication ("EC") prior to investigating anyone, particularly a U.S. person (USPER) or entity." *Id.* ¶ 2.

- "An EC initiating an investigation must include the targeted individual has, is, or is about to commit a crime or is acting on behalf of a foreign power, in order to justify opening an investigation pursuant to FBI practice and procedure and the Attorney General Guidelines." *Id.* ¶ 4.

Full release of the document advances the public's right to know what the government did, who was involved, and why the investigation into Trump and Russian interference was necessary. *See Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995).

Here, the released record appears to say a single FBI agent initiated a criminal FARA investigation of unidentified members of the Trump presidential campaign. *See* Second Brock Decl. ¶ 6. "It was created by Peter Strzok, approved by Peter Strzok, and sent from Peter Strzok to Peter Strzok. This is not usual procedure." *Id*. In fact, "FBI policy prohibits an agent from initiating and approving his or her own case. Such action violates FBI oversight protocols put in place to protect the American people from an FBI agent acting unilaterally." *Id*. ¶ 7.

The Crossfire Hurricane case was opened as a FARA investigation. As a FARA case, "the EC initiating the Crossfire Hurricane investigation should have included a list of facts articulating reasonable suspicion that individuals associated with a U.S. presidential campaign had been engaged by the Russian government to act on that government's behalf." *Id*. ¶ 8.

However, the EC document released here "does not articulate any factors that would lead a reasonable person to suspect a USPER connected to the presidential campaign was acting on behalf of the Russian government." *Id*.  In fact, the EC does not identify any individual by name as a target of the investigation; it does not articulate any factors that address the required elements of FARA and, therefore, "does not contain sufficient justification for initiating an investigation into USPERs." *Id*. ¶ 9.  On the face of the information released in the document, the EC here – which initiated the Crossfire Hurricane investigation - "offers no legitimate predication justifying the investigation of USPERs involved in a presidential campaign or subsequent FISA intercept of a U.S. citizen." *Id*. ¶ 11.

The public undoubtedly has a significant interest in assessing how federal law enforcement officials initiated this particularly noteworthy investigation, who was involved, and the details that warranted a FARA investigation as "required by routine FBI-policy and procedure and the Attorney General Guidelines."  *See* Second Brock Decl. ¶¶ 8-9.

The public has a right to disclosure to remain informed and able to assess the diligence of the FBI's investigation and "whether the government had the evidence but nevertheless pulled its punches." *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1094 (D.C. Cir. 2014) ("*CREW*").  Like in *CREW*, Defendant tries to minimize the public interest in the FBI's initiation of the Crossfire Hurricane investigation.  As in *CREW*, this attempt should be rejected.

II.     *In Camera* Review is Appropriate

FOIA is meant to promote openness, not secrecy; disclosure, not withholding.  Courts do not require a showing of bad faith to engage an *in camera* review.  Rather, Courts have departed from routine reliance on agency affidavits, prescribing to *in-camera* review to facilitate full de

novo adjudication of FOIA exemptions. *See Ray v. Turner*, 587 F.2d 1187, 1194-95 (D.C. Cir. 1978) (relating to Exemption 1).  As fully developed in its prior briefing documents, Plaintiff supports the Court undergoing an *in-camera* review to determine the appropriateness of Defendants' asserted exemptions. The only record at issue here is 4-pages in length and contains minimal disputed redactions.  However, the minimal withholdings in this brief document are significant and exemplify the intent and spirit of FOIA – the right of citizens "to be informed about what their government is up to."  *Davis*, 968 F.2d at 1282.

### III.   Conclusion

Defendant is not entitled to summary judgment where the public interest in disclosure of the EC in its entirety far outweighs Defendant's purported justifications for withholding the details in the document that initiated the Crossfire Hurricane investigation.  For all of the reasons described above, in Plaintiff's initial memorandum (ECF No. 21), supplemental memorandum (ECF No. 26), and both Brock declarations.  Defendant's motion for summary judgment should be denied and Plaintiff's cross-motion should be granted, or, in the alternative, Defendant should be required to produce unredacted versions of the responsive records at issue *in camera* for the Court's review.

Dated:  July 9, 2021

Respectfully submitted,

*/s/ Lauren M. Burke*
Lauren M. Burke
D.C. Bar # 1028811
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
Phone: (202) 646-5194

*Counsel for Plaintiff*