UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br> *Defendant*. | Civil Action No. 1:19-cv-02743 (CJN) |

## MEMORANDUM OPINION

The sole issue in this Freedom of Information Act case is whether the government's partial redactions of a single document are justified. The Court concludes that they are.

### Background

In July 2019, Judicial Watch submitted identical FOIA requests to the FBI and DOJ's FOIA/PA Mail Referral Unit. Pl.'s Response to Def.'s SMF ¶ 1. The requests sought the electronic communication that initiated an FBI counterintelligence investigation of President Trump's 2016 campaign. *Id.* The Department produced a single four-page document with a number of redactions. *See* Joint Stipulation, ECF No. 19-4. Judicial Watch does not contest the adequacy of the search for responsive documents but contends that some of the redactions were improper. *Id.*

The government moved for summary judgment, arguing that all redactions were proper. Def.'s Mot., ECF No. 19. Judicial Watch cross-moved for summary judgment, contesting some of the redactions as misapplied or not clearly discernable and requesting that the Court conduct an *in camera* review of the document and proposed redactions to ensure the redactions were justified. Pl.'s Mot., ECF No. 21. In response, the Department re-evaluated its withholdings and re-

processed the record, releasing one additional line from the document and clarifying which exemptions applied to which redactions. *See* Pl.'s Supp. Mot. at 2, ECF No. 26. Judicial Watch then clarified its challenges. *Id.* at 3–8.

Following argument on the motions, *see* Hearing of September 1, 2021, the Department again re-processed the document, this time imprinting the specific exemptions asserted on top of each set of redactions. *See* Joint Status Report, ECF No. 33; *see also* 5 U.S.C. § 552(b) (requiring such detailed imprinting whenever technically feasible). Judicial Watch then narrowed its challenges to a subset of the remaining redactions. Joint Status Report, ECF No. 33. The Court then ordered the Department to file a supplemental memorandum further explaining some redactions. *See* Minute Order of May 2, 2022. The Department did so. Def.'s Response, ECF No. 35. Judicial Watch did not file a reply to the Department's supplemental memorandum.

## Legal Standards

The Freedom of Information Act requires federal agencies to make their records available to the public upon request. 5 U.S.C. § 552(a)(3); *see DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015); *Cabezas v. Fed. Bureau of Investigation*, 2022 WL 898789, at *1 (D.D.C. Mar. 28, 2022). But agencies may redact or withhold information that falls within one of nine enumerated exemptions. 5 U.S.C. § 552(b); *see United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021); *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). Those nine exemptions "must be narrowly construed." *Milner*, 562 U.S. at 565. Furthermore, an agency may only withhold information under an exemption if the agency "reasonably foresees that disclosure would harm an interest protected by [the] exemption" or if "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i); *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 357–58 (D.C. Cir. 2021). The agency carries the burden of proving the applicability

of an exemption and showing either a foreseeable risk of harm or that the law prohibits disclosure. *See Petroleum Info. Corp. v. Department of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015) (quotation omitted) (noting that district courts must review *de novo* the agency's justification for non-disclosure). After reviewing the agency's representations, the Court must then decide "whether [the agency's] non-disclosure was permissible." *Elec. Priv. Info. Ctr.*, 777 F.3d at 522.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An agency may attempt to meet its summary judgment burden through a declaration or an affidavit, but conclusory declarations or affidavits "that merely recite statutory standards or are overly vague or sweeping" will not suffice. *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009).

## Analysis

I.   **The Government Has Established That Its Redactions Were Appropriate.**

1.   **Exemptions 6 and 7(C)**

Judicial Watch contests redactions in the "CC:" section of the document. The government contends that the redactions are appropriate under Exemptions 6 and 7(C).

FOIA Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This exemption has been broadly construed to protect individuals from disclosures pertaining to the intimate details of their lives. *Rural Housing Alliance v. Dep't of Agric.*, 498 F.2d 73, 77 (D.C. Cir. 1974). And "[t]he Supreme Court has made clear that Exemption 6 is designed to protect

personal information in public records, even if it is not embarrassing or of an intimate nature[.]" *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989).  To determine whether the agency appropriately withheld names in documents, the court must balance the privacy interests involved against the public interest represented by the basic purpose of FOIA—namely, to open agency action to the light of public scrutiny.  *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976).  To determine whether Exemption 6 applies, a court must "weigh the 'privacy interest in non-disclosure against the public interest in the release of the records." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting *Horner*, 879 F.2d at 874).

Exemption 7(C) covers records or information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C).  This is a broader standard than Exemption 6—extending beyond those disclosures that are "clearly unwarranted" to those that merely "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6), (7)(C).  Provided there is a notable public interest in favor of disclosure, the same balancing test between personal privacy and the public interest is undertaken, just with more weight towards nondisclosure.  Notably, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to."  *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quotation marks omitted).[1]

The government argues that the FBI employees to whom the investigating document was sent have a personal privacy interest in keeping their names out of the public record regarding their involvement.  It notes that the FBI's professional staff have substantial privacy interests in not

---

[1] It is undisputed that the document constitutes a "record[ ] or information compiled for law enforcement purposes," and so falls within the scope of Exemption 7.

having their identities released, because disclosure may subject them to "reprisal based on their involvement in specific administrative activities," including unwanted harassment. First Seidel Decl. ¶ 23, ECF No. 19-3. And the government argues that there is no public interest at all in favor of disclosure because releasing the information would not "shed light on or significantly increase the public's understanding of the operations and activities of the FBI." Second Seidel Decl. ¶ 3, ECF No. 30-1.

Judicial Watch argues that pursuant to FBI policy and practice, the names of FBI personnel are "always listed in hierarchical format with the highest-ranking authority at the top and on down to the lowest ranking official listed last." Pl.'s Mot. at 3, ECF No. 21 (citing First Brock Decl. ¶ 5). Relying on the fact that Peter Strzok—whose name was not redacted and appears as the last of four names on the CC lines—was the Deputy Assistant Director of the Counterintelligence Division of the FBI, Judicial Watch infers that there were only a handful of officials with higher rank who could also be listed in the CC lines. *Id.* at 3–4. Judicial Watch argues that such senior officials do not have any privacy interests in performing their official duties. Judicial Watch also argues that the identities of FBI and government officials involved in the investigation are well-documented, so any privacy interests are minimal. Furthermore, Judicial Watch contends there is a significant public interest in this document which countervail any privacy interests that do exist.[2]

After Judicial Watch made its initial arguments, the Department reconsidered its redactions in the CC section, and disclosed an additional official's name, Jonathan Moffa. The government admitted he is a high-ranking FBI official in a policy-making or public position and conceded that such individuals "do not have privacy rights while acting in their official capacity." Second Seidel

---

[2] At argument, Judicial Watch did not concede that even if the others listed on the CC line were relatively junior, that redaction would necessarily be appropriate. But it did admit the strength of its argument depends on the seniority of the CC'd officials.

Case 1:19-cv-02743-CJN   Document 36   Filed 07/25/22   Page 6 of 15

Decl. at 2. But the government explained that the two remaining redacted names are not those of policy-making officials or otherwise public positions. Def.'s Response, ECF No. 35; Third Seidel Decl. at 2 (titled as the "Second Declaration of Michael G. Seidel"). One is a non-executive GS-14 Supervisory Special Agent, and the other is a non-executive GS-15 Supervisory General Attorney. Third Seidel Decl. at 2. The latter was a Unit Chief in the National Security Cyber Law Branch of the FBI's Office of General Counsel, but this is not a public-facing role. *Id.* Both were CC'd on the document for general awareness, the government states, but neither exercised any decision-making authority over the matters described in the document. *Id.*

The Court believes the government has sufficiently justified the redactions. The government has explained that the remaining redacted names are of non-senior executive officials at the GS-14 and GS-15 levels. Those redactions are therefore not of the names of senior Department officials, but of mid-level civil servants. Neither official held a policy-making position. Second Seidel Decl. ¶ 3 ("FBI Special Agents and Professional Staff that were not high-ranking FBI officials in policy-making or public positions."); Third Seidel Decl. at 2.[3]

To be sure, there is a significant public interest in knowing what officials were involved in the initiation of this investigation. The origin of an FBI investigation into a presidential campaign is of obvious public significance. And the FBI's potential for political influence is well known. *See, e.g.*, Curt Gentry, *J. Edgar Hoover* (1991); Tim Weiner, *Enemies: A History of the FBI* (2012). And Judicial Watch relies on a number of claimed irregularities in the initiation of this investigation. *See* Pl.'s Reply, at 1–3 (citing Second Brock Decl.).

---

[3] To the extent there is any remaining debate as to how to characterize the seniority of GS-14 and GS-15 officials, Judicial Watch conceded the matter by failing to respond to the Government's response.

But any potential public interest in the names of these officials evaporates in light of their positions and roles. Neither is particularly senior or in a policy-making role. And neither had decision-making authority for the matters described in the document. Third Seidel Decl. at 2. There is therefore little legitimate public interest in disclosure of their names.

Balanced against the public's low interest in disclosure is the potential for disclosure to result in a significant invasion of personal privacy. Given the high-profile nature of this investigation, disclosure of the two names could reasonably lead to the officials being harassed with requests for unauthorized disclosures of information about the investigation, or even to their being targeted with violence. First Seidel Decl. ¶ 23. Because the Department's professional staff have a substantial privacy interest in not having their identities released, the redactions are appropriate under at least Exemption 7(C). *See* 5 U.S.C. § 552(7)(c).[4]

### 2. Exemption 7(D)

Judicial Watch challenges several redactions that the government asserts are necessary to protect the identity of a confidential source.

Exemption 7(D) protects from disclosure information compiled for law enforcement purposes that "could reasonably be expected to disclose the identity of a confidential source" or "in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). An individual is considered a confidential source under Exemption 7(D) "if the person provided information under an express assurance of confidentiality or in circumstances

---

[4] Judicial Watch's other arguments on this point are unsupported. Judicial Watch has provided no evidence that the government disclosed the names of the agents whose names are redacted.

from which such an assurance could be reasonably inferred." *Parker v. DOJ*, 934 F.2d 375, 378 (D.C. Cir. 1991) (citation omitted); *DOJ v. Landano*, 508 U.S. 165, 179–81 (1993).

The government argues that it invoked 7(D) to protect "the identifying of, and information provided by, a Foreign Government to the FBI under express grants of confidentiality." Seidel Decl. ¶ 27. The government notes the importance of respecting such assurances because they enable the government to obtain factual, relevant and timely information, and because disclosure would affect the "foreign government's willingness to provide accurate and relevant information pertaining to criminal activities." *Id.* ¶¶ 28–29

Judicial Watch initially responded that it did not challenge withholding the identity of the foreign source. *See* Pl.'s Cross-Motion at 4–5, ECF No. 21. But in its supplemental briefing, Judicial Watch asserted that its concession was limited to the redactions on page 3 of the document—it did not extend to the other redactions. *See* Pl.'s Supp. Memorandum at 6, ECF No. 25. Then in a post-hearing filing, Judicial Watch again updated the redactions that it was challenging, this time including most 7(D) redactions on both page 2 and page 3. Joint Status Report, ECF No. 33. To the extent that it has presented any argument against these redactions, Judicial Watch contends that the FBI withheld information obtained without express assurances of confidentiality, and that in light of the publicly available information, any concerns about confidentiality are now moot. *See* Pl.'s Supp. Memorandum at 6, ECF No. 25.

The Court agrees with the government that summary judgment is appropriate as to these redactions. It has provided a clear rationale for withholding "the identity of the source and the information provided by the source"—here, a foreign government—because of an express assurance of confidentiality. Second Seidel Decl. ¶ 4; *see* Seidel Decl. ¶¶ 24–29. Plaintiff's arguments to the contrary are without merit. Judicial Watch has offered nothing more than

speculation about whether the 7(D) redactions were broader than that information obtained through express assurances of confidentiality. *See* Pl.'s Supp. Memorandum at 6. It has provided no basis to discount the Seidel Declarations, which assert that the information was redacted based on these express assurances. And Judicial Watch's publicity argument fares no better. Simply because the events at issue have themselves been subject to publicity does not mean that the particular information that was redacted here has been publicly reported, nor does it follow that government confirmation of information already made public by other means would necessarily be harmless. *See United States v. Zubaydah*, 142 S. Ct. 959, 968 (2022) (concluding that the government may have good reasons not to confirm or itself disclose "information that has entered the public domain").

    3.    **Exemption 7(E)**

Judicial Watch contests several redactions of information that the government asserts could disclose its investigative techniques and allow criminals to circumvent the law.

Exemption 7(E) permits an agency to withhold records compiled for law enforcement purposes when production of the records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). An agency seeking to apply Exemption 7(E) must, accordingly, make two showings: (1) that the records were "compiled for law enforcement purposes," *id.*, and (2) the agency must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law," *Mayer Brown LLP v. Internal Revenue Serv.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (quoting *PHE, Inc. v. U.S. Dep't of Justice*, 983 F.2d 248, 251 (D.C. Cir. 1993)). These requirements must be met in a nonconclusory fashion,

yet there is a "relatively low bar for the agency to justify withholding" under 7(E). *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). The exemption has been read to apply broadly and to allow agencies to withhold information that "would provide insight into its investigatory or procedural techniques." *Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16, 28–29 (D.D.C. 2011).

The government asserts 7(E) exemptions to redact (i) sensitive file numbers and (ii) the identity of FBI counter-intelligence squads and specific legal attaché offices. *See* Seidel Decl. ¶¶ 30–38. The file numbers are coded and include information about the FBI's investigative processes. *Id.* ¶¶ 33–35. And the government asserts that the other 7(E) redactions are based on protecting the identity and location of specific FBI Counter-Intelligence Squads and legat offices. *Id.* at 36–38; *see* Hearing of September 1, 2021.

Judicial Watch does not challenge the redaction of the file numbers but asserts that the government has failed to demonstrate how disclosure of the identity and location of FBI Counter-Intelligence Squads and participating legat offices poses a threat to the interests of this investigation. *See* Pl.'s Supp. Memo. at 7. Specifically, because the crime here is "political and information in nature[ t]he location of the squads or legats involved is irrelevant." *Id.*

The Court agrees with the government. As an initial matter, the relevant inquiry is not whether the information poses a threat to this particular investigation, but to criminal investigative techniques generally. *See* 5 U.S.C. § 552(b)(7)(E). Judicial Watch made no arguments applicable to the correct legal standard. And even if construed favorably, the arguments Judicial Watch makes lack merit. As the government argued, disclosure of the identity and location of counter-intelligence squads, and various legat offices and foreign governments that work with the FBI,

may permit sophisticated international criminals to avoid or evade those locations and thereby decrease the effectiveness of such activities and cooperation. *See* Second Seidel Decl. ¶¶ 6–7.[5]

### 4. Exemption 1

Judicial Watch contests a redaction that the government asserts is information that is appropriately classified pursuant to an Executive order as essential to national defense.

FOIA Exemption 1 permits the withholding of records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). To withhold information under FOIA Exemption 1, an agency must establish that the requirements of the relevant Executive Order have been met, *see ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619, 624 (D.C. Cir. 2011), and it may satisfy this burden by submitting detailed affidavits or declarations that "set forth reasons for invoking Exemption 1 that are both plausible and logical," *see Unrow Human Rights Impact Litig. Clinic v. United States*, 134 F. Supp. 3d 263, 275 (D.D.C. 2015). Such affidavits and declarations are entitled to substantial deference given the "uniquely executive" nature of the national security determinations at stake. *See Unrow*, 134 F. Supp. 3d at 272 (internal quotation marks and citation omitted).

The government asserts that about four lines of text on page 3 should be redacted because it contained "information received from a Deputy Chief of Mission . . . and informal diplomatic channels." Stein Decl. ¶ 7. The government relies on Sections 1.4(b) and (d) of Executive Order 13526, which includes among its list of classifiable materials government records that pertain

---

[5] The Court notes that there is only one redaction that Judicial Watch continues to challenge which is based exclusively on Exemption 7(E). *See* Joint Status Report, ECF No. 33. Even if the Court were wrong about the propriety of the 7(E) Exemption, it would result in the disclosure of only one or two words.

"foreign government information" and "foreign relations or foreign activities of the United States, including confidential sources." Executive Order No. 13526, § 1.4(b) and (d), 75 Fed. Reg. 707 (Dec. 29, 2009). *See also* Stein Decl. ¶ 7. Executive Order 13526 allows such information to be classified by a government official with "original classification authority" if the official "determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security," and the official "is able to identify or describe the damage." *Id.* § 1.1(a)(1), (4); *see* Stein Decl. ¶ 20 (explaining that the declarant, Eric Stein, is "an original classification authority" in this case). The State Department has explained that "[t]he withheld information reflects diplomatic discussions and would reveal cooperation with a foreign government, done with the expectation of confidentiality, on a sensitive national security topic." Second Stein Decl. ¶ 6. This information is classified at the SECRET level because its unauthorized disclosure reasonably could be expected to cause serious damage to national security. *Id.*

Judicial Watch did not initially challenge the Exemption 1 redactions. But its supplemental memorandum contends that the government's explanations for its redaction "do[ ] not logically fit State Department's asserted exemptions." Pl.'s Supp. Memo at 8. Judicial Watch failed to include any further elaboration of how the explanations do not fit the redactions, but it continues to press its position. Joint Status Report, ECF No. 33.

The Court will not invent reasons to doubt the government's declarations. *See Unrow*, 134 F. Supp. 3d at 272 (noting the Court of Appeals adopts a "deferential posture in FOIA cases" related to Exemption 1). In any event, the Court sees no reason to doubt them. They are clear and

facially sufficient. Judicial Watch has provided no reason to dispute the sufficiency of this redaction.[6]

## II.   The Government Has Established That It Produced All Reasonably Segregable Information.

Judicial Watch contends that the government failed to produce portions of the document that contain reasonably segregable information.

FOIA requires that an agency release "any reasonably segregable portion of a record" after applying the FOIA exemptions.  5 U.S.C. § 552(b).  Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material.  *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007); *Pinson v. U.S. Dep't of Justice*, No. 12-1872, 2016 WL 29245, at *23 n.20 (D.D.C. Jan. 4, 2016).  When non-exempt information is "inextricably intertwined" with exempt information, reasonable segregation is not possible.  *See Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *Charles v. U.S Dep't of Def.*, 979 F. Supp. 2d 35, 42 (D.D.C. 2013) (explaining such intertwining often leads to withholding full documents).  A court may rely on government affidavits that show with *reasonable* specificity why documents or portions of a document withheld pursuant to a valid exemption cannot be further disclosed.  *See Armstrong v. Exe. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996); *see also Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (explaining that it is unreasonable to require so much detail as to effectively disclose exempted materials).

---

[6] In its reply, Judicial Watch appears to argue that the full document should be disclosed in its entirety simply because of the public interest in the document.  *See* Pl. Reply at 1–3 (citing *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995)).  This argument is without merit.  Public interest in a document is not a basis for a court to order disclosure if FOIA exemptions are otherwise validly invoked.  *See generally* 5 U.S.C. § 552.

13

Here, the government has clearly carried its burden. It has provided a detailed justification of its redactions; while it has made several, most are small and discrete, and the government has provided detailed explanations for all redactions that Judicial Watch contests. *See* First Seidel Decl.; Second Seidel Decl.; Stein Decl.

### III. *In Camera* Review Is Unnecessary.

Judicial Watch asserts that *in camera* review is appropriate here because the records are "few in number and of short length," *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980), and the declaration and motion are devoid of sufficient detail to allow it and the Court to assess the validity of the claimed exemptions, *Smith v. ATF*, 977 F. Supp. 496, 501 (D.D.C. 1997); *see also Ray v. Turner*, 587 F.2d 1187, 1194–95 (D.C. Cir. 1978) (concluding the relevant standard for whether to conduct *in camera* review is simply "Whether the district judge believes that *in camera* inspection is needed in order to make a responsible *de novo* determination on the claims of exemptions.").

The government contends that the Seidel Declarations, Stein Declaration, and *Vaughn* Index provide sufficient detail so that *in camera* review is unnecessary.

The Court agrees with the government. The Court found the declarations and redactions sufficiently clear that *in camera* review would not assist its review. While *in camera* review can be efficient, particularly when the document is so short, *see Allen*, 636 F.2d at 1298 (D.C. Cir. 1980), here it is unnecessary for the reasons discussed above.[7]

---

[7] The Court notes that there is a cost to every *in camera* review. There is always a risk that information could be disclosed—intentionally or unintentionally—by someone or by some process involved. Also of significance is that other would-be leakers may be incrementally more comfortable disclosing information whenever there are incrementally more potential sources of the leaks. Particularly when dealing with matters the government contends are highly sensitive, courts must carefully consider whether to conduct *in camera* review and do so only when it would

14

**Conclusion**

For the forgoing reasons, the Court grants the government's motion for summary judgment and denies Judicial Watch's motions in a contemporaneous Order.

DATE:  July 25, 2022

                                              CARL J. NICHOLS
                                              United States District Judge

---

add value.  To be sure, sometimes that review is appropriate.  But it should not be done simply as a matter of course, even when the information is discrete.